**UNITED STATES of America,**

v.

**John E. CALHOON, Defendant.**

**Crim. A. No. 92–12–MAC (DF).**

United States District Court,
M.D. Georgia,
Macon Division.

July 28, 1994.

Dixie A. Morrow, Charles E. Cox, Asst. U.S. Atty., Macon, GA, for U.S.

## ORDER

FITZPATRICK, District Judge.

Pending before the court are several motions by Defendant in this case. First he asks the court to reconsider its prior ruling regarding the duty of the attorney for his former employer to advise him about the necessity for retaining separate counsel. Second, he argues that any statements he made to Special Agent Gilly should be suppressed. Third, he urges the court to compel the Government to produce the specific regulation or regulations upon which it relies that shows the reimbursements he sought on behalf of Charter Medical Corporation were unlawful. Fourth, he again raises his selective prosecution, or abuse of prosecutorial discretion, argument. Finally, he argues that the superseding indictment contains surplusage that should be stricken from it.

Defendant faces a fourteen count indictment charging him with three counts of mail fraud and eleven counts of defrauding the United States by seeking Medicare reimbursement for costs that were not properly reimbursable. The Government asserts that Defendant, while a manager for Charter Medical Corporation, knowingly and willfully submitted cost reports for Medicare reimbursement that contained advertising expenses that are not recoverable under Medicare. In addition, the Government alleges that Defendant knowingly and willfully used the United States mails in furtherance of his scheme to defraud the United States.

### I. Attorney–Client Privilege

Defendant asserts once again that the attorney for Charter Medical violated his rights in not advising him of his right to obtain separate counsel and not to cooperate with the internal investigation being conducted. Charter Medical Corporation ("CMC") was represented by the law firm of King & Spalding. At some time in 1989 or 1990, investigators with the Office of Inspector General of the Department of Health and Human Services began looking into reim-

John T. Strauss, Covington, GA, for defendant.

bursement irregularities from CMC. As part of that investigation, King & Spalding was asked to conduct an internal investigation for the corporation of the billing practices and reimbursement requests from CMC to Medicare. During the time period under investigation, Defendant was the CMC manager primarily responsible for producing the requests for reimbursements to be submitted to Medicare for payment.

Lawyers with King & Spalding interviewed Defendant in connection with their internal investigation. Government's Exhibit M–4 details the advice Defendant was given with respect to the issue of attorney-client privilege. In addition, as noted in the Court's September 29, 1993, Order, it was the usual practice of the investigation team at King & Spalding to use what can only be called an "Advice Form." This form explained specifically King & Spalding's role in the investigation, their representation of CMC, and the right of the interviewee to obtain other counsel.

Defendant argues that King & Spalding, acting on behalf of CMC which was under compulsion by the Government, was actually a Government Agent. As Government Agents, Defendant argues further that the failure to advise him of his right to counsel violated his constitutional rights against self-incrimination and his Sixth Amendment right to counsel. The court finds little evidence to support the argument that King & Spalding acted as *de facto* government agents during their internal investigation for CMC.

 Assuming *arguendo* that during the investigation King & Spalding were effectively Government Agents, there was still no violation of Defendant's rights. As the Supreme Court held in *Illinois v. Perkins,* 496 U.S. 292, 110 S.Ct. 2394, 110 L.Ed.2d 243 (1990), if the Defendant is unaware that he is talking with a member of law enforcement, the warnings required by *Miranda v. Ari-*

zona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), are simply not applicable. 110 S.Ct. at 2396. There is no assertion that King & Spalding was acting like an under-cover agent. Nor is there any argument that King & Spalding was paid by law enforcement to procure Defendant's admissions. Applying the clear statement of the Court in *Perkins,* therefore, any statements Defendant made to King & Spalding, regardless of their status, that might tend to inculpate him violate no duty or privilege and must be admissible.

Additionally, the documentary evidence before the court supports the finding that the attorneys for King & Spalding did in fact advise Defendant of his right to counsel, his right to terminate the interview at anytime, and his right not to cooperate with the internal investigation. The court has reviewed the testimony from the hearing and the other evidence, including exhibits to the Government's response to the first of Defendant's motions, and finds that King & Spalding did in fact advise Defendant of his rights.[1]

The motion to suppress evidence received by the Government from King & Spalding is again **DENIED.** There was no violation of any privilege, nor was there any violation of any right of the Defendant during the interview by lawyers from that firm on behalf of CMC's internal investigation.[2]

## II. Motion to Suppress Statements Made to Special Agent Gilly

 Defendant next argues that statements made to Special Agent Gilly should be suppressed. The interview conducted by Agent Gilly occurred in Defendant's home. He was advised that he was a target of the investigation. He was told he had a right to terminate the interview at anytime and that he could obtain counsel if he chose.

---

1. Government Exhibit M–4 was identified, reviewed, and discussed at the motion hearing. It does not appear from the Courtroom Deputy Clerk's records that the exhibit was admitted into evidence. Because it was discussed at the hearing, and because it appears to be a business record, the court will admit that document into evidence, assuming and overruling any objection.

2. It is important to note that Defendant has cited no legal requirement imposed upon King & Spalding to advise Defendant of his rights. Defendant cites no case, statute, nor any ethical obligation of the law firm to apprise Defendant of their duty of representing the corporation, which is the client, and the right of the Defendant to obtain separate counsel.

Defendant testified that he did not know what being a target of an investigation meant.[3] This testimony is simply not reasonable. Any adult professional, such as Defendant, who has watched even a minimum of television news in the past twenty years has heard reports that a given person was the "target of a grand jury inquiry" or that someone was "the target of the investigation." In either context, the phrase clearly means that the named person is believed to have committed some crime that is under investigation by police or a grand jury.

Defendant further denies that he was ever advised that he had a right to counsel. In the alternative, he claims that Agent Gilly's conduct and statement to the effect, "If you've done nothing wrong then you don't need a lawyer," rendered his statement coerced or otherwise involuntary.

As the Eleventh Circuit has stated, "The district court must consider the totality of the circumstances in assessing whether police conduct was 'causally related' to the confession." *United States v. Mendoza–Cecelia,* 963 F.2d 1467, 1475 (11th Cir.) *cert. denied* — U.S. —, 113 S.Ct. 436, 121 L.Ed.2d 356 (1992). The court finds no conduct by law enforcement that renders his statement to Agent Gilly involuntary. The interview was relatively short, occurred in Defendant's home, and Defendant was not in custody. In short, the statements were freely and voluntarily given. The motion to suppress this statement is **DENIED**.

### III. *Motion to Compel Production of the Law Upon Which the Government Relies.*

Defendant asks the court to direct the Government to produce the regulations and statutes it claims Defendant violated. He argues that because of the confusing nature of the regulations governing Medicare reimbursement, he cannot be prosecuted (consistent with due process) for submitting claims that were different for claiming expenses that were not sought by others.

Defendant has been indicted in Counts 4 through 11 for violations of 18 U.S.C. § 1001,

making a false statement to defraud the Government. As the Court understands the Government's theory of the case, they seek to prove at trial that Defendant knew the distinction between reimbursable outreach expenditures and nonreimbursable advertising expenses. Knowing and understanding this distinction, Defendant chose to submit claims to Medicare consolidating all advertising and outreach expenses under the single category of outreach. By this scheme, Defendant sought to obtain reimbursement for expenses to which he knew or should have known CMC was not entitled, thus defrauding the Government. Under section 1001, this conduct, if proven beyond a reasonable doubt, would be criminal.

Defendant's argument seems to be that it is the knowledge element that fails as a matter of law. According to Defendant, unless the Government can point to a statute, regulation or other source that has the force of law detailing the distinction between outreach and advertising, he cannot be charged with knowingly and willfully seeking to defraud the Government.

■ The court disagrees. Whether Defendant knowingly and willfully violated the law is a question for the jury. The proof of the case must convince them beyond a reasonable doubt that Defendant knew the difference, or should have known the difference, but submitted claims for unreimbursable expenses anyway. It is for the jury to decide, not this court at this stage of the proceeding, whether Defendant possessed culpable knowledge and specific intent to defraud the Government.

### IV. *Selective Prosecution*

■ Defendant again urges the court to find that he is a victim of selective prosecution. As the court held in its September 29 Order, Defendant has the burden of showing that others have committed the same conduct with which Defendant is charged but were not prosecuted, and that the decision to prosecute this defendant was motivated by a constitutionally impermissible reason. *Unit-*

---

**3.** Nor did Defendant ask the agents to clarify the phrase for him.

*ed States v. Lamberti,* 847 F.2d 1531, 1535 (11th Cir.1988).

■ Defendant has completely failed to carry his burden. He has shown no other person who has committed similar acts but was not prosecuted. Nor has he demonstrated that there was a race- or gender-based bias that motivated the decision to prosecute him. Since Defendant has failed both elements of his claim, his motion to quash the indictment for selective prosecution must be **DENIED.**

### V. Motion to Strike Surplusage from the Indictment.

■ Defendant asserts that any language in the indictment charging him with "causing" something to be done should be removed. He argues that since he is not charged with a conspiracy, alleging criminal liability for the actions of some other person is impermissible.

■ Defendant misunderstands the function of 18 U.S.C. § 2, the accomplice liability statute. As has clearly been held by the Eleventh Circuit, section 2 is a definitional statute. *United States v. Tobon–Builes,* 706 F.2d 1092, 1099 (11th Cir.1983). It provides in pertinent part that, "Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal." The statute "applies generally to all federal criminal statutes and prohibits one from causing another to do any act that would be illegal if one did it personally." *United States v. Walser,* 3 F.3d 380, 388 (11th Cir.1993). It is not necessary to include the statute in the allegation of criminal conduct because "§ 2(b) is considered embodied in full in *every* federal indictment." *United States v. Michaels,* 796 F.2d 1112, 1118 (9th Cir.1986) *cert. denied* 479 U.S. 1038, 107 S.Ct. 893, 93 L.Ed.2d 845 (1987). As the Revision Notes to the statute found in the 1994 edition of the West *Criminal Code and Rules* make clear,

> The section as revised makes clear the legislative intent to punish as a principal not only one who directly commits an offense and one who "aids, abets, counsels,

commands, induces or procures" another to commit an offense, but also anyone who causes the doing of an act which if done by him directly would render him guilty of an offense against the United States.

> ***It removes all doubt*** that one who puts in motion or assists in the illegal enterprise but causes the commission of an indispensable element of the offense by an innocent agent or instrumentality, is guilty as a principal even though he intentionally refrained from the direct act constituting the offense.

(emphasis added).

In the present case, it is **Defendant's** conduct in causing some act of another that sought to defraud the United States that is on trial. The Government must, of course, prove the elements of action, including the Defendant's specific intent to defraud, in order to obtain a conviction on this indictment. The fact that some other person actually performed some ministerial task is insignificant so long as there is proof that Defendant participated in the preparation, production, or transmission of the false document with knowledge of the falsity and the intent to defraud the United States.

The motion to strike surplusage is **DENIED.**

### CONCLUSION

Each of Defendant's presently pending motions, with the exception of his motion *in limine* has been ruled on. The motion to reconsider the prior ruling with respect to the conduct of King & Spalding is **DENIED.** The motion to suppress any statements made to Special Agent Gilly is **DENIED.** The motion to compel the production by the Government of the regulations it believes Defendant violated is **DENIED.** The motion to quash the indictment for selective prosecution is **DENIED.** Finally, the motion to strike surplusage from the indictment is **DENIED.**

The motion *in limine* shall be carried with the trial of the case. The parties are specifically advised to bring to the court's attention during the course of the trial whenever mat-

ters within the scope of the motion are about to be revealed.

The trial of this case is set to begin on August 15, 1994. The parties shall be notified at a later date regarding the time for a pretrial conference. All requests to charge and proposed voir dire questions are due to the court no later than at the pretrial conference.

SO ORDERED.