**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Michael G. MICHAELS, Defendant-Appellant.**

No. 84–5366.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 8, 1986.

Decided Aug. 11, 1986.

Gary Feess, Asst. U.S. Atty., Los Angeles, Cal., for plaintiff-appellee.

Robert F. Landheer, Santa Barbara, Cal., for defendant-appellant.

Before WRIGHT and NELSON, Circuit Judges, and ROSENBLATT, District Judge.*

NELSON, Circuit Judge:

Michael G. Michaels appeals his convictions for: (1) mailing an explosive device with the intent to kill or injure another, in violation of 18 U.S.C. § 1716; and (2) causing the interstate transportation of an explosive device with the intent to kill or injure another, in violation of 18 U.S.C. §§ 844(d) and 2(b). Michaels contends: (1) that the district court erred in refusing to order production of the postal inspectors' rough interview notes; and (2) that the evidence at trial was insufficient to support his conviction under 18 U.S.C. §§ 844(d) and 2(b), because his conviction under those statutes required a showing of specific intent to transport in interstate commerce. We affirm.

## I

### FACTS

In the fall of 1979, Appellant Michaels began working as a commissioned salesperson for Right–O–Way Air Freight Company ("ROW"). During 1980, Michaels developed a major account with Nissin-Sharpe, a large Japanese freight company. Between 1980 and 1983, Michaels received annual commissions, mostly from the Nissin-Sharpe account, ranging from $41,000 to $91,000.

Michaels believed that Joshua Brown, president of ROW, was cheating him out of some of his commissions and interfering in his relationship with Nissin-Sharpe. Michaels voiced these complaints frequently during the 1980–83 period. In June, 1983, after a stormy meeting with Brown, Michaels quit his job with ROW, saying he would take the Nissin-Sharpe account with him.

Michaels tried unsuccessfully to take the Nissin-Sharpe account away from ROW, and by late 1983 his financial condition had deteriorated to the point that he was unable to pay his creditors. Michaels attempted to resecure his commissions on the Nissin-Sharpe account from ROW, but Brown refused to reinstate them.

On Friday, January 13, 1984, a package containing an explosive device arrived at ROW's office in Inglewood, California. It was addressed to Joshua Brown, and was disguised to appear as if it had been sent by the Maserati Import Company. Brown

---

* Of the District of Arizona, sitting by designation.

was at his New Jersey office at the time, so the package remained at the Inglewood office until Monday morning, January 16, when Susan Martin, Brown's assistant, sent it to Brown in New Jersey via the interoffice mail. On the morning of January 17, Brown opened the package in his New Jersey office. It exploded, and Brown was seriously injured.

Postal inspectors discovered ten latent fingerprints and one palm print on the remains of the box which had contained the explosive device. All the prints were identified as Michaels'. Michaels was arrested and charged shortly thereafter.

Before trial, Michaels moved for production of the postal inspectors' rough notes from witness interviews. The motion was denied. Michaels renewed the motion during the trial, and it was again denied. After trial, Michaels was convicted for: (1) mailing an explosive device with the intent to kill or injure another, in violation of 18 U.S.C. § 1716; (2) causing the interstate transportation of an explosive device with the intent to kill or injure another, in violation of 18 U.S.C. §§ 844(d) and 2(b); and (3) possession of an unregistered explosive device in violation of 26 U.S.C. §§ 5861(d) and 5871. Michaels was sentenced to thirty years in custody. He appeals from the first two of his three convictions.

## II

## DISCUSSION

### A. *Denial of Michaels' Motion for Production of the Rough Notes*

■ Discovery questions are ordinarily reviewed for abuse of discretion. *United States v. Balk*, 706 F.2d 1056, 1060 (9th Cir.1983). To prevail on appeal, the appellant must show not only that the court abused its discretion, but that the abuse resulted "in prejudice to the defendant's substantial rights." *United States v. Duncan*, 693 F.2d 971, 979 (9th Cir.1982).

Michaels contends that the district court abused its discretion in finding: (1) that Michaels was not entitled to production of the rough notes under the standards enunciated in *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); and (2) that Michaels was not entitled to production of the rough notes under the Jencks Act, 18 U.S.C. § 3500. As discussed below, we find that the district court did not abuse its discretion in refusing to order production of the rough notes. Accordingly, we do not reach the question of whether such abuse prejudiced Michaels' substantial rights.

### 1. *Michaels' Brady Claim*

■ Under *Brady*, the government is obliged to produce exculpatory evidence which is "material to guilt or to punishment." 373 U.S. at 87, 83 S.Ct. at 1196. Michaels contends that the postal inspectors' rough interview notes could "substantiate and prove" that the package containing the explosive device was never actually *mailed,* and that the notes therefore are material to Michaels' guilt on the charge of mailing an explosive device under 18 U.S.C. § 1716.[1]

Michaels' contention is based on the fact that several witnesses at trial could not recall (1) whether they had seen stamps or postmarks on the package, (2) how many labels had been attached to the package, or (3) how many packages had been delivered to the Inglewood office the day the explosive package arrived. Michaels' position is that the rough notes would have refreshed the witnesses' recollections of their statements to the postal inspectors, and thereby provided more substantial proof regarding (1) the presence or absence of stamps and labels, and (2) how the package was actually delivered.

Michaels repeatedly asserts that the agents' rough interview notes are "more accurate" and more "inherently reliable" than the typed interview summaries provided by the government. However, he states

---

**1.** Michaels, of course, as the defendant, did not carry the burden of proof in the trial below. Nonetheless, his assertion here is that the requested notes would have "proven" that an element of the offense under 18 U.S.C. § 1716 was missing.

no basis for this belief. Indeed, Michaels admits that he "was in no position to know what was in the notes." He simply states that "arguably, based on the sanitized summaries, it appeared that the notes also would be material or helpful," and that "the need for the rough notes was to reveal any discrepancies between the typed summations . . . and the original, more accurate rough notes." In other words, Michaels wanted to compel production of the notes so that he could search through them for anything useful.

 However, "the appellant['s] mere speculation about materials in the government's files [does not require] the district court or this court under *Brady* to make the materials available for [the appellant's] inspection." *United States v. American Radiator & Standard Sanitary Corp.*, 433 F.2d 174, 202 (3d Cir.1970). Nor does *Brady* "require the trial court to make an *in camera* search of the government files for evidence favorable to the accused." *United States v. Harris*, 409 F.2d 77, 80–81 (4th Cir.1969). *Brady* does not establish a "duty to provide defense counsel with unlimited discovery of everything known by the prosecutor." *United States v. Agurs*, 427 U.S. 97, 106, 96 S.Ct. 2392, 2398, 49 L.Ed.2d 342 (1975). Rather, in a case in which a specific request for evidence is made, "the test for materiality is whether the requested evidence might affect the outcome of the trial." *Id.* at 104, 96 S.Ct. at 2397; *United States v. Goldberg*, 582 F.2d 483, 488 (9th Cir.1978).

 Michaels contends that the rough notes might prove the package was never mailed, and might thus affect the outcome of the trial as to the charge under 18 U.S.C. § 1716. This contention is without merit. First, Michaels offers no reason for believing that the notes contain significant material that is not contained in the typed summaries he already possesses. Second, even if Michaels were to use the notes to impeach every witness whose testimony he questions, all he could reasonably establish is what is already evident from the record—that the facts regarding stamps,

labels, postmarks and numbers of packages are confused.

Third, Michaels does not contend that the testimony of Postal Inspectors Upton and Ray would be affected in any way by the production of the notes. Inspector Upton testified that although no stamps were found on the package after the explosion, uncancelled $1.00 and $2.00 stamps were found at the scene. He also testified that cardboard fibers found on the backs of the stamps, and glue found on the package, were consistent with the possibility that the stamps had come from the package. Inspector Ray testified that parcels often go through the mail without the stamps being cancelled, and also testified that he recognized his own handwriting on the package. The testimony of Upton and Ray was by far the strongest evidence that the package containing the explosive was actually mailed; if the rough notes would not affect this testimony, they could not, as Michaels contends, "prove" that the package was never mailed.

Because Michaels has not shown that the production of the postal inspectors' rough interview notes would be likely to affect the outcome of the trial, we find that the district court did not abuse its discretion in finding that Michaels was not entitled to production of the rough notes under the standards enunciated in *Brady*.

2. *Michaels' Jencks Act Claim*

 Michaels also claims that he was entitled to production of the rough notes under the Jencks Act, 18 U.S.C. § 3500. This claim is also without merit. The Jencks Act requires, after a government witness has testified at trial,

> that the government produce upon demand any available statement made by the witness which relates to the subject matter of such witness's testimony at trial. The Act narrowly defines "statements" as: (1) writings made by the witness and "signed or otherwise approved or adopted" by him, or (2) accounts which are "a substantially verbatim recital" of the witness's oral statements "recorded contemporaneously with the making of

such oral statement." 18 U.S.C. § 3500(e).

*United States v. Griffin,* 659 F.2d 932, 936 (9th Cir.1981).

Michaels has made no attempt to show that the postal inspectors' rough notes satisfy either of the two requirements that would qualify them as witness's "statements" for purposes of the Jencks Act. Therefore, he has not shown that the district court abused its discretion in refusing to order production of the notes on that basis.

**B.** *Michaels' Conviction Under 18 U.S.C. § 844(d)*

1. *The "Knowledge or Intent" Requirement*

 a. *Standard of Review*

Issues of statutory interpretation are reviewed *de novo. United States v. Mehrmanesh,* 689 F.2d 822, 827 (9th Cir.1982); *cf. United States v. McConney,* 728 F.2d 1195, 1201 (9th Cir.) (en banc) (questions of law reviewed *de novo* ), *cert. denied,* — U.S. ——, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).

 b. *Analysis*

Section 844(d) provides, in pertinent part, that

> [w]hoever transports ... in interstate ... commerce any explosive with the knowledge or intent that it will be used to kill, injure, or intimidate any individual ... shall be imprisoned for not more than ten years, or fined not more than $10,000, or both....

Michaels contends that a conviction under this statute requires a showing of specific intent to transport in interstate commerce. He offers two theories in support of this position: (1) that the "knowledge or intent" requirement in § 844(d) relates not just to the device being used to kill or injure, but also to transporting the device in interstate commerce; and (2) that because Michaels was indicted and convicted under *both* §§ 844(d) *and* 2(b) (the basic agency provision making a person liable as a principal for willfully causing an innocent party to commit an illegal act), the government had to show that he specifically intended that Brown's assistant transport the device in interstate commerce.

■ Michaels' first argument is unconvincing for two reasons. First,

> [i]t is elementary that the meaning of a statute must, in the first instance, be sought in the language in which the act is framed, and if that is plain ... the sole function of the courts is to enforce it according to its terms.

*Central Trust Co. v. Official Creditor's Committee,* 454 U.S. 354, 359–60, 102 S.Ct. 695, 697–98, 70 L.Ed.2d 542 (1982) (quoting *Caminetti v. United States,* 242 U.S. 470, 485, 37 S.Ct. 192, 194, 61 L.Ed.2d 442 (1917)). A plain language reading of § 844(d) suggests only that the person who "transports ... in interstate commerce" must do so "with the knowledge or intent that [the device] will be used to kill, injure, or intimidate." The language itself does not suggest any requirement of a specific intent to transport in interstate commerce.

Second, this plain language interpretation was followed in *United States v. Carlson,* 561 F.2d 105 (1st Cir.), *cert. denied,* 434 U.S. 973, 98 S.Ct. 529, 54 L.Ed.2d 464 (1977). The court stated that

> [t]he elements of [§ 844(d) ] are 1) transportation or receipt in interstate commerce of 2) any explosive 3) "with the knowledge or intent that it will be used to kill, injure, or intimidate any individual...."

561 F.2d at 108. Clearly the court related the intent requirement only to the use of the device to kill, injure, or intimidate, and not to the transportation element. We agree with that interpretation, and accordingly reject Michaels' first argument.

Michaels' second argument is based on the fact that he was convicted under §§ 844(d) *and* 2(b), not § 844(d) alone. Section 2(b) states that "[w]hoever *willfully causes* an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal." (emphasis added). The language of the indictment, says Mi-

chaels, demonstrates the way the two statutes were combined. Michaels was charged with "knowingly and with the intent to injure and kill another, caus[ing] the transportation in interstate commerce of an explosive device."

Thus, Michaels' second argument is that: (1) he was not convicted of transporting the explosive device in interstate commerce *himself;* rather, he was convicted of "willfully causing" Ms. Martin, Brown's secretary, to transport the device in interstate commerce; (2) therefore, the government had to prove that he specifically intended that Ms. Martin transport the device in interstate commerce; and (3) the evidence at trial was insufficient to support such a finding.

■ While this is a clever argument, it is founded on the erroneous assumption that the specific inclusion of § 2(b) in the indictment somehow alters the nature of the offense with which Michaels is charged. In fact, the specific inclusion of § 2(b) is insignificant. Whether specified or not, § 2(b) is considered embodied in full in *every* federal indictment. *United States v. Maselli,* 534 F.2d 1197, 1200 (6th Cir.1976); *United States v. Lester,* 363 F.2d 68, 72 (6th Cir.1966), *cert. denied,* 385 U.S. 1002, $87 S.Ct. 705, 17 L.Ed.2d 542 (1967). Thus, Michaels' indictment under §§ 844(d) *and* 2(b) is functionally identical to an indictment under § 844(d) alone.[2] Accordingly, the intent requirement, as discussed above, relates only to the use of the device to kill, injure, or intimidate, and not to the transportation element.

### 2. *Sufficiency of the Evidence*
#### a. *Standard of Review*

Sufficient evidence existed if, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (emphasis in original); *accord United States v. Marabelles,* 724 F.2d 1374, 1377 (9th Cir.1984); *United States v. Christopher,* 700 F.2d 1253, 1261 (9th Cir. 1983). Reversal is required only when "no rational trier of fact could find guilt beyond a reasonable doubt." *Jackson,* 443 U.S. at 317, 99 S.Ct. at 2788; *see also Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1941).

#### b. *Analysis*

The evidence was sufficient to support Michaels' conviction under § 844(d) if *any* rational trier of fact could have found beyond a reasonable doubt that Michaels: (1) transported or received in interstate commerce (2) any explosive (3) with the knowledge or intent that it would be used to kill, injure, or intimidate any individual. *See Carlson,* 561 F.2d at 108.

■ When a defendant places mail matter in an authorized mail depository, to be sent and delivered according to the directions thereon by the Postal Service of the United States, he has placed that mail matter in interstate commerce. *See United States v. Martino,* 648 F.2d 367, 381 (5th Cir.1981), *cert. denied,* 456 U.S. 943, 102 S.Ct. 2006, 72 L.Ed.2d 465 (1982). The testimony of Postal Inspectors Upton and Ray, as discussed above, and the presence of Michaels' fingerprints on the fragments of the box, were sufficient, when viewed in the light most favorable to the prosecution, to allow a rational trier of fact to conclude that Michaels placed the package in the United States Mail. Therefore, the same

---

**2.** In either case, the government has the option of proceeding under theories of direct or vicarious liability. *See United States v. Tobon-Builes,* 706 F.2d 1092, 1099 n. 2 (11th Cir.1983). That this should be so is hardly surprising; the vicarious liability alternative

 is an outgrowth of common law principles of criminal responsibility dating at least as far back as *Regina v. Saunders,* 2 Plowd. 473

(1575); and of principles of civil responsibility established, by force of the maxim *qui facit per alium facit per se* ["He who acts through another, himself acts"], at least as early as the 14th century. [See: *United States v. Gooding,* 25 U.S. (12 Wheat.) 460, 6 L.Ed. 693 (1827); Sayre, Criminal Responsibility for the Acts of Another, 43 Harv.L.Rev. 689 (1930).]
*Lester,* 363 F.2d at 72.

evidence was sufficient to support a finding that Michaels placed the package in interstate commerce.

Having found that Michaels mailed the package, a rational trier of fact could not avoid concluding that Michaels mailed an explosive device. Since the device was set to explode when the package was opened, a rational trier of fact could conclude that Michaels sent the device with the knowledge or intent that it would be used to kill or injure. Accordingly, we find that the evidence at trial was sufficient to support Michaels' conviction under § 844(d).

Michaels' convictions are AFFIRMED.