**UNITED STATES of America, Plaintiff—Appellee,**

v.

**Phillip Wendell REED, Jr., Defendant—Appellant.**

No. 01–50542.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 8, 2003.

Decided Jan. 7, 2004.

---

Ronald L. Cheng, Esq., Joseph H. Zwicker, Esq., Erik M. Silber, Esq., USLA—Office of the U.S. Attorney, Crim-

inal Division, Los Angeles, CA, for Plaintiff–Appellee.

Jerald L. Brainin, Los Angeles, CA, for Defendant–Appellant.

Before: FISHER and BYBEE, Circuit Judges, and MAHAN, District Judge.*

MEMORANDUM **

Defendant Phillip Wendell Reed, Jr. appeals multiple convictions for bank robbery on three grounds: (1) the district court clearly erred in accepting the prosecution's justification for peremptorily striking the sole African–American venire member; (2) the district court abused its discretion in imposing full liability for restitution on Reed and requiring immediate payment; and (3) the district court abused its discretion by not ordering production of tapes of purported telephone conversations between prosecution witnesses. We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a), and we affirm.

I.

Reed appeals the district court's acceptance of the prosecution's justifications for exercising a peremptory challenge. Reed is African–American, and he alleges that the prosecutor purposefully discriminated by peremptorily challenging the only African–American member of the venire.

During voir dire, one venire person stated that she was formerly a member of the defense team in a high-profile criminal case and that she remained less willing to believe the testimony of law enforcement witnesses. She was dismissed for cause. The prosecutor then requested a sidebar and told the judge that he had earlier seen the African–American venire person in the witness room. He had two concerns stemming from that encounter. First, when the prosecutor entered the witness room, he saw her chatting with the venire person who had just been dismissed for cause. The prosecutor was concerned that the dismissed venire person may have influenced the other's views. Second, when the prosecutor turned to leave the witness room, the African–American venire person remarked, "He is not supposed to be in here." The prosecutor asked the judge to conduct additional voir dire of this venire person "before we consider our strike."

The trial judge asked the African–American venire person to join the sidebar. In response to the judge's questions, she stated that she had chatted with the dismissed venire person but that she had not discussed her views on the legal system. She also confirmed that she had seen the prosecutor in the witness room. Both the prosecutor and defense counsel declined the judge's invitation to ask additional questions. After reviewing a few more venire persons, the prosecutor exercised his challenge.

Defense counsel then requested a sidebar and argued that a "racial motive" was the only possible explanation for the challenge. The prosecutor repeated his concerns about the venire person: (1) her communication with the dismissed venire person, and (2) her comment objecting to the prosecutor's presence in the witness room. The prosecutor added that her comment was "hostile" and that it was accompanied by a "look." He also stated that he did not feel comfortable questioning the venire person about it, and after

* The Honorable James C. Mahan, United States District Judge for the District of Nevada, sitting by designation.

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

discussing it with co-counsel, decided to exercise the challenge.

The district court analyzed Reed's claim under the three-prong test of *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). It found that Reed satisfied the first *Batson* prong, the prima facie case of discrimination, and that the prosecutor met the second prong, the articulation of a race-neutral reason for challenging the venire member. *Id.* at 96–98. In the third and final *Batson* step, Reed needed to show that the government's proffered race-neutral explanations were pretextual. *See Hernandez v. New York,* 500 U.S. 352, 359, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991). The district court concluded that the prosecutor's two race-neutral justifications dispelled any inference of racial motivation. It found the explanations particularly credible because the prosecutor mentioned them before exercising the challenge. Reed appealed the district court's acceptance of the government's explanations.

We review the district court's factual findings in the final step of a *Batson* analysis for clear error. *United States v. Steele,* 298 F.3d 906, 910 (9th Cir.2002). The final *Batson* step is "peculiarly within a trial judge's province," because it turns on the credibility of the government's proffered reason. *Hernandez,* 500 U.S. at 365 (internal quotation marks omitted). Although the district court did not see the encounter between the prosecutor and the challenged venire member, it heard their accounts of it. In the initial sidebar and in the additional voir dire, the court observed the demeanor of the prosecutor and the challenged venire member, and demeanor is often the "best evidence" in a *Batson* analysis. *Id.*

■ Inferences of discrimination are difficult to draw when the relevant class contains only one member, but the defen-

dant bears the burden in the final step of a *Batson* analysis to show that the government purposely discriminated. *Id.* at 359. The district court's conclusion that Reed failed to carry this burden was not clearly erroneous. The remark that the challenged venire member made in the witness room provided a sufficient basis for the peremptory strike. We have allowed more tenuous inferences about a venire person's attitude to sustain a peremptory challenge. For example, a venire person's recent service on another jury was a neutral, reasonable basis for a challenge, because prior jury service raised the possibility of hostility toward the government. *See United States v. Power,* 881 F.2d 733, 740 (9th Cir.1989). Here, the venire person's remark demonstrated not a possible dissatisfaction with the government, but actual disapproval. Her criticism was directed at not at the government generally, but at the particular prosecutor trying the case in which she was to serve as a juror.

Reed faulted the prosecutor for not having further questioned the challenged venire member about it. This argument overlooks the significant likelihood that such questions would be self-defeating. If the prosecutor or even the trial judge had asked the venire person about the hostile look or her comment, the questions themselves would likely have engendered or renewed her hostility. Moreover, responsibility for inquiring into the prosecutor's assertions belongs to defense counsel, not the government. *See United States v. Changco,* 1 F.3d 837, 842 n. 3 (9th Cir. 1993). Reed also argued that the challenged venire member's responses during additional voir dire left the impression that she could be fair. However, this Circuit has consistently affirmed peremptory challenges without requiring a demonstration of unfairness. *See, e.g., United States v.*

*Bauer,* 84 F.3d 1549, 1554–55 (9th Cir. 1996).

## II.

■ Reed argues that the district court abused its discretion by (1) failing to apportion liability among all participants in the robberies; (2) failing to order that Reed make only nominal periodic payments; and (3) requiring immediate payment. When a restitution order is within the bounds of the statutory framework, we review for an abuse of discretion. *United States v. Stoddard,* 150 F.3d 1140, 1147 (9th Cir.1998).

The district court acted within its discretion by assigning full liability to Reed. When multiple persons are responsible for the loss, the district court may make each defendant liable for the full amount or may apportion liability to reflect the level of contribution to the victim's loss or the economic circumstances of each defendant. 18 U.S.C. § 3664(h); *United States v. Booth,* 309 F.3d 566, 576 (9th Cir.2002). Reed provided the district court no justifications for reducing his liability. His relative culpability did not warrant apportionment; he played a leadership role in the robberies. Reed claimed that he is unable to pay restitution, but his refusal to complete a personal financial statement as part of the presentence report precluded the verification of his indigent status. The failure to complete the personal financial statement also foreclosed the possibility that the district court would require only nominal periodic payments under 18 U.S.C. § 3664(f)(3)(B).

■ The district court also acted within its discretion when it ordered immediate payment in accordance with the general rule of restitution. *See United States v. Martin,* 278 F.3d 988, 1006 (9th Cir.2002). Restitution is due immediately, unless "in the interest of justice" the court orders payment due on a certain date or in installments. 18 U.S.C. § 3572(d)(1). In the absence of a completed personal financial statement, the district court had no reason to depart from the general rule of immediate repayment.

■ Reed contends that the district court incorrectly thought that adoption of all the sentencing report's recommendations was mandatory, because the court remarked during sentencing that the report was "mandatory." The record reveals, however, that the district court's comment was in response to the prosecutor's inquiry about whether the court would impose restitution and a fine. As discussed above, the imposition of restitution is mandatory, 18 U.S.C. § 3664(f)(1)(A), but its apportionment, 18 U.S.C. § 3664(h), and its reduction to nominal payments, 18 U.S.C. § 3664(f)(3)(B), are discretionary. The court's waiver of a fine and the interest on the restitution shows that the court correctly understood that it possessed discretion to depart from the recommendations and, in fact, chose to exercise that discretion.

## III.

■ Reed appeals the district court's decision not to order production of purported telephone conversations between prosecution witnesses. The Jencks Act provides that after a prosecution witness has testified on direct examination and upon the defendant's motion, the court shall order production of all the witness's statements relating to his testimony and "in the possession of the United States." 18 U.S.C. § 3500(b). The Act defines statements to include recordings and transcriptions. 18 U.S.C. § 3500(e). We review the district court's denial of discovery under the Jencks Act for an abuse of

discretion. *United States v. Michaels,* 796 F.2d 1112, 1115 (9th Cir.1986).

A demand for Jencks discovery must be "sufficiently precise to identify the statements requested," *United States v. Wallace,* 848 F.2d 1464, 1471 (9th Cir.1988). Reed did not establish the existence of the purported conversations. Instead, he argued that their existence was highly probable, because the prosecution relied heavily on the testimony of these witnesses. Reed's discovery request also lacked sufficient precision, because he failed to identify specific dates on which the calls purportedly occurred. Accordingly, the district court did not err in denying Reed's discovery motion.

AFFIRMED.