# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued November 14, 2008     Decided January 13, 2009

No. 07-3032

UNITED STATES OF AMERICA,
APPELLEE

v.

EDWARD KENNETH KELLY, JR.,
APPELLANT

Appeal from the United States District Court
for the District of Columbia
(No. 06cr00153-01)

*Raymond J. Rigat*, appointed by the court, argued the cause for the appellant.

*SuzAnne C. Nyland*, Assistant United States Attorney, argued the cause for the appellee. *Jeffrey A. Taylor*, United States Attorney, and *Roy W. McLeese III* and *Mary B. McCord*, Assistant United States Attorneys, were on brief.

Before: GINSBURG, HENDERSON and ROGERS, *Circuit Judges*.

Opinion for the court filed by *Circuit Judge* HENDERSON.

Concurring opinion filed by *Circuit Judge* ROGERS.

KAREN LECRAFT HENDERSON, *Circuit Judge*: Edward Kenneth Kelly, Jr. (Kelly) appeals his conviction on one count of unlawfully possessing with intent to distribute cocaine in violation of 21 U.S.C. § 841(a), (b)(1)(C) and one count of using, carrying and possessing a firearm during a drug trafficking crime in violation of 18 U.S.C. § 924(c). Kelly claims that his guilty plea was not voluntary, knowing, intelligent or adequately supported by the record; his plea to the section 924(c) violation in particular violated the Double Jeopardy Clause of the United States Constitution; and he received ineffective assistance of counsel regarding the section 924(c) plea. For the reasons set forth below, we affirm the judgment of the district court.

## I.

In June 2004, pursuant to court order the FBI began intercepting and recording Kelly's telephone conversations. The wiretap concluded on August 28, 2004 and, on September 1, 2004, the FBI applied for, and obtained, warrants to search Kelly's vehicle and his girlfriend's apartment located at 1526 Potomac Ave., S.E., Washington, D.C. The warrants were executed on September 2, 2004 at 6:37 a.m. Upon searching the apartment, the FBI discovered in the living room a backpack containing two plastic bags that held 497.1 grams of cocaine hydrochloride and, approximately twenty feet from the backpack and under a mattress, a loaded Glock 9-millimeter handgun. FBI agents also retrieved approximately $46,500 from inside the apartment.

On June 1, 2006, a federal grand jury indicted Kelly on (1) one count of unlawfully possessing with intent to distribute (PWID) cocaine, in violation of 21 U.S.C. § 841(a), (b)(1)(c);[1]

---

[1]21 U.S.C. § 841(a) makes it "unlawful for any person knowingly or intentionally . . . to manufacture, distribute, or dispense, or possess

(2) one count of unlawful possession of a firearm and ammunition by a person convicted of a crime punishable by imprisonment for a term exceeding one year, in violation of 18 U.S.C. § 922(g)(1); and (3) one count of using, carrying and possessing a firearm during a drug trafficking offense, in violation of 18 U.S.C. § 924(c).[2] Indictment at 1-2, *United States v. Kelly*, Cr. No. 06-153 (D.D.C. June 1, 2006) (D.C. Indictment).

The district court held plea hearings on October 31, 2006 and November 2, 2006. At the November 2nd hearing, Kelly entered into a plea agreement in which he agreed to plead guilty to the first and third counts in exchange for the dismissal of the second count and the government's withdrawal of a notice of a prior felony drug conviction. Plea Agreement at 1-2, *United States v. Kelly*, Cr. No. 06-153 (D.D.C. Nov. 2, 2006). Kelly also agreed to the above-mentioned facts, accepting them as "fair[] and accurate[]." *Id.* at 2; *see also* Statement of Offense at 3, *United States v. Kelly*, Cr. No. 06-153 (D.D.C. Nov. 2, 2006).

During the earlier October 31st plea hearing, Kelly verified that he had fully read and discussed the plea agreement with defense counsel. Transcript of Guilty Plea at 20, *United States*

---

with intent to manufacture, distribute, or dispense, a controlled substance." 21 U.S.C. § 841(b)(1)(C) provides that "[i]n the case of a [schedule I or II controlled substance], . . . [a] person [violating § 841(a)] shall be sentenced to a term of imprisonment of not more than 20 years."

[2]18 U.S.C. § 924(c) provides that "any person who, during and in relation to any . . . drug trafficking crime . . . uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such . . . drug trafficking crime" be sentenced to an additional and consecutive term of imprisonment.

*v. Kelly*, Cr. No. 06-153 (D.D.C. Oct. 31, 2006) (Tr.). In explaining the government's burden of proof, the district court specified that, as to count one, the government would have to prove beyond a reasonable doubt that Kelly "possessed cocaine[,] . . . that [he] did so with the intent to distribute it, and . . . that [he] knew that the substance that [he] possessed was a controlled substance, namely cocaine." *Id.* at 33. As to count three, the district court explained that the government would have to prove that Kelly "committed the crime of unlawful possession with intent to distribute cocaine" and that he "knowingly used or carried a firearm during and in relation to the commission of that crime or [he] knowingly possessed a firearm in furtherance" thereof. *Id.* at 33-34. Kelly agreed with the government's factual proffer except that he denied telling the FBI that "[t]here was a loaded gun in the bedroom." *Id.* at 37-38. Kelly explained to the district court that the cocaine in the backpack was not his but instead belonged to someone else who had swapped vehicles with Kelly the day before and left the cocaine in a backpack in Kelly's vehicle. *Id.* at 39, 61-62. Kelly thought there was money in the backpack but, after receiving a telephone call from the person stating that he needed to get the package from the vehicle, Kelly "thought it was drugs and it was." *Id.* at 48, 61-62. Kelly further explained that he transferred the backpack to the apartment because his car had been broken into earlier. *Id.* at 63-64, 93. He also stated that he kept the gun in the apartment in order to protect himself, his girlfriend "and whatever was in there." *Id.* at 63.

At the November 2nd hearing, Kelly clarified that he had first become aware of the drugs in the backpack when he parked his car in the driveway of his girlfriend's residence. *Id.* at 87-88. He explained that he knew who the drugs belonged to and believed that the owner was in fact going to sell the drugs. *Id.* at 88-89. When asked whether he took the drugs into the apartment to protect them, Kelly responded that he "didn't give it that much thought . . . [but] fe[lt] like it's probably a better

chance that the bag would be safe [sic] in the house than in the truck." *Id.* at 92-93. He also agreed that "if somebody broke [into the apartment] and [he] saw them trying to take some of [his] property, [he] wouldn't hesitate to think about using the gun to keep them from stealing [his] property." *Id.* at 96. The district court then observed that, although "this is one of the most razor-thin proffers [it had] ever taken[, it] think[s] given the facts that have come out . . . we may be able to go forward." *Id.* at 98. As the plea hearing continued, Kelly alerted the judge to the fact that he had been charged with another section 924(c) violation in Maryland and that he believed it was the same section 924(c) violation as the one to which he was then pleading guilty. *Id.* at 104-05.[3] The district court nonetheless reasoned that because "the facts that occurred on September 2, 2004, that are the subject of this charge could well have been multiple crimes" – so that the predicate crime for each section 924(c) count was different – "there may not be a double jeopardy problem."[4] *Id.* at 117. Kelly's counsel agreed. *Id.* at 118 ("Right, and even though it's the same gun, it's a different

---

[3]Kelly had been charged earlier in Maryland on three counts of a 21-count indictment. The counts included: (1) conspiracy to distribute and possess with intent to distribute cocaine and cocaine base between November 2000 and December 2004 in the District of Maryland, the District of Columbia and elsewhere, in violation of 21 U.S.C. § 841; (2) using a communication facility in furtherance of a narcotics conspiracy, in violation of 21 U.S.C. § 843(b); and (3) using and possessing a firearm in furtherance of conspiracy to distribute and possess with intent to distribute cocaine and cocaine base on September 2, 2004 in the District of Maryland, in violation of 18 U.S.C. § 924(c). Fourth Superseding Indictment at 1-2, 15, 19, *United States v. Briscoe*, No. AW-04-0559 (D. Md. Jan. 25, 2006) (Md. Indictment).

[4]The Double Jeopardy Clause bars any person "subject for the same offence to be twice put in jeopardy of life or limb."

drug trafficking offense."). Kelly then advised the court that he was ready to plead guilty to counts one and three of the indictment and that he did so "voluntarily and of his own free will." *Id.* at 126-27. The district court accepted Kelly's guilty plea, *id.* at 127, and subsequently sentenced him to 50 months' imprisonment on count one and 60 months' imprisonment on count three, to run consecutively, followed by 36 months of supervised release on count one and 48 months on count three, to run concurrently. Kelly filed his notice of appeal on March 7, 2007.

## II.

### A. *Double Jeopardy*

Kelly argues that his guilty plea on the section 924(c) count should be vacated because he had previously been charged with, and acquitted of, a section 924(c) violation in Maryland involving the same handgun and, therefore, the district court plainly erred in not recognizing that the Double Jeopardy Clause barred the second section 924(c) charge. Kelly also contends that his section 924(c) conviction should be vacated (or at least remanded for an evidentiary hearing) because his trial counsel was ineffective in not raising a double jeopardy defense and, thus, violated Kelly's Sixth Amendment right to counsel. We apply plain error review to the double jeopardy issue because Kelly "allow[ed] [the] alleged error to pass without objection" below. *In re Sealed Case*, 283 F.3d 349, 352 (D.C. Cir. 2002); *see also United States v. Olano*, 507 U.S. 725, 732 (1993) (under plain error standard, appellant must establish that (1) there was an "error," (2) it was "plain," (3) it "affect[ed] substantial rights" and (4) it "seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings") (internal citations and quotation marks omitted). To establish ineffective assistance of counsel, "a criminal defendant must show . . . that his lawyer made errors 'so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth

Amendment,' and that . . . there is a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *United States v. Rashad*, 331 F.3d 908, 909 (D.C. Cir. 2003) (internal citations omitted).

As a starting point, we note that "when the judgment of conviction upon a guilty plea has become final and the offender seeks to reopen the proceeding, the inquiry is ordinarily confined to whether the underlying plea was both counseled and voluntary. If the answer is in the affirmative then the conviction and the plea . . . foreclose the collateral attack . . . [unless] on the face of the record the court had no power to enter the conviction or impose the sentence." *United States v. Broce*, 488 U.S. 563, 569 (1989). It is clear from the face of the record that the district court was authorized to accept Kelly's guilty plea to the section 924(c) charge. The section 924(c) charge included in the Maryland indictment alleged that "[o]n or about September 2, 2004, *in the District of Maryland*," Kelly possessed/used a firearm in furtherance of a drug trafficking crime, namely, "*conspiracy* to distribute and possess with intent to distribute [cocaine and cocaine base]." Md. Indictment at 19 (emphases added). The section 924(c) charge *sub judice*, on the other hand, alleged that "[o]n or about September 2, 2004, *within the District of Columbia*," Kelly possessed/used a firearm in furtherance of a drug trafficking crime, namely, "*possession with intent to distribute* cocaine." D.C. Indictment at 1-2 (emphases added). Thus, the predicate crimes supporting the section 924(c) charges are not the same.

In *United States v. Felix*, 503 U.S. 378 (1992), the United States Supreme Court held that double jeopardy did not bar the subsequent prosecution of the defendant on a conspiracy charge where "two of th[e] nine overt acts [supporting the conspiracy charge] were based on conduct that had been the subject of the earlier . . . prosecution" on a substantive crime (attempting to

manufacture methamphetamine). 503 U.S. at 382, 388-91. In so concluding, the Court noted the long-standing "rule that a substantive crime and a conspiracy to commit that crime are not the 'same offence' for double jeopardy purposes." *Id.* at 389. Accordingly, it held that "the conspiracy charge against [the defendant] was an offense distinct from any crime for which he had been previously prosecuted, and the Double Jeopardy Clause did not bar his prosecution on that charge." *Id.* at 391-92.

Applying the Court's analysis in *Felix*, we believe that double jeopardy plainly does not bar Kelly's prosecution on the section 924(c) count before us on review. Even if the same gun supported both charges, the predicate offense required for each charge to stand—conspiracy in Maryland and PWID cocaine here—are different "for double jeopardy purposes." *Felix*, 503 U.S. at 389; *see also United States v. Phipps*, 319 F.3d 177, 184 (5th Cir. 2003) (explaining application of same-elements test of *Blockburger v. United States*, 284 U.S. 299 (1932), to multiple section 924(c)(1) charges).[5] Kelly's constitutional claim

---

[5]Kelly's reliance on *United States v. Finley*, 245 F.3d 199 (2d Cir. 2001), and *United States v. Wilson*, 160 F.3d 732 (D.C. Cir. 1998), in support of his argument that this prosecution on the section 924(c) charge violates double jeopardy is misplaced. *Finley* and *Wilson* did not apply the Double Jeopardy Clause but rather the rule of lenity, holding that the Congress did not intend section 924(c) to authorize multiple charges given the facts of each case. In *Finley*, the Second Circuit reversed a second section 924(c) conviction because the predicate offenses for both section 924(c) charges "were simultaneous or nearly so" and therefore "consisted of virtually the same conduct with the same criminal motivation." *Finley*, 245 F.3d at 207. There, the first section 924(c) charge was based on the defendant's possession of a firearm in furtherance of cocaine distribution; the second section 924(c) charge was based on his possession of the same firearm in furtherance of his possession with intent to distribute the

therefore fails, as does his claim under Fed. R. Crim. P. 11 that the district court should have advised him he was pleading guilty to a charge the government could not bring.

Kelly's claim of ineffective assistance of counsel also fails. Kelly believes his counsel's ineffectiveness is apparent from the record and, therefore, we need not remand for an evidentiary hearing, which is our normal practice on direct appeal. *See United States v. Soto*, 132 F.3d 56, 59 (D.C. Cir. 1997). Although we agree with Kelly that a remand for an evidentiary hearing is not necessary, we believe Kelly's claim of ineffective assistance fails at the first step of the *Strickland* test: his counsel's conduct "was within the range of competence demanded of attorneys in criminal cases." *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (internal quotation marks omitted); *see Strickland v. Washington*, 466 U.S. 668, 687-89 (1984). The *Strickland* analysis examines the information available to

same cocaine plus additional cocaine discovered "minutes after" Finley sold the drugs to an officer. *Id.* at 207. Assuming *Finley* is persuasive, the case is inapposite. Here, the Maryland indictment makes clear that the conspiracy charge was predicated on more than Kelly's PWID in the District on September 2, 2004: it charged Kelly with knowingly and intentionally using a cell phone on June 11, 2004 in order to further the conspiracy. Md. Indictment at 15. Therefore, the conspiracy charged in Maryland and the PWID in the District were not "simultaneous or nearly so." *Finley*, 245 F.3d at 207. In *Wilson*, this Court vacated one section 924(c) conviction because the defendant used the firearm only once and was charged with two section 924(c) violations—one with the predicate offense of first degree murder and the other with the predicate offense of killing a witness with the intent to prevent him from testifying. *Wilson*, 160 F.3d at 748-50. *Wilson* is inapposite because the defendant in that case was charged with only one predicate act: discharging a firearm. By contrast, Kelly both conspired to possess and possessed drugs, two acts involving distinct conduct. *See Felix*, 503 U.S. at 389-90 ("agreement to do [an] act is distinct from the act itself").

Kelly's counsel when he recommended a plea and asks whether his counsel's decision prejudiced the proceedings that followed. Even assuming that the same firearm was involved in both section 924(c) charges and that the District PWID was an overt act included in the Maryland conspiracy charge, there is nevertheless no constitutional bar to the section 924(c) charge we are reviewing. The substantive offense of PWID is not a lesser-included offense of the conspiracy to commit that offense, as *Felix* makes clear. *See* 503 U.S. at 389. No additional fact-finding would change that rule of law and, thus, we need not remand Kelly's claim. It plainly fails inasmuch as his counsel was not obliged to raise a meritless defense.

### B. Rule 11

Kelly makes three additional arguments under Fed. R. Crim. P. 11.[6] First, he argues that the factual proffer was insufficient to support his conviction on PWID cocaine. Second, he makes the same argument regarding the factual proffer supporting his conviction under section 924(c). Third, he claims that he did not understand that he had to intend to distribute the cocaine in order to be guilty of PWID and therefore did not understand the nature of the charge. Again, we review these arguments for plain error because he failed to make them in district court. *In re Sealed Case*, 283 F.3d at 352.

Kelly's first argument fails because there was "sufficient evidence from which a reasonable jury could conclude" that Kelly committed, or at least aided and abetted the commission of, the offense of PWID cocaine. *United States v. Abreu*, 964

---

[6]Fed. R. Crim. P. 11 requires, *inter alia*, that the sentencing court determine that (1) there is a "factual basis for a plea," (2) the defendant understands "the nature of each charge to which the defendant is pleading" and (3) "that the plea is voluntary and did not result from force, threats or promises (other than promises in a plea agreement)."

F.2d 16, 19 (D.C. Cir. 1992). To prove a violation of section 841(a), the government must show beyond a reasonable doubt that the defendant (1) "knowingly or intentionally" (2) possessed a controlled substance (3) with intent to distribute it. 21 U.S.C. § 841(a).[7] To aid and abet, however, "'all that is necessary is to show some affirmative participation which at least encourages the principal offender to commit the offense, with all its elements, as proscribed by the statute.'" *United States v. Monroe*, 990 F.2d 1370, 1374 (D.C. Cir. 1993) (quoting *United States v. Garrett*, 720 F.2d 705, 713-14 (D.C. Cir. 1983)). Moreover, "[w]hoever . . . aids, abets . . . induces or procures [an offense's] commission, is punishable as a principal." 18 U.S.C. § 2(a). Even though Kelly was not indicted as an aider or abettor, we have explained that "an indictment need not specifically include an aiding and abetting charge because, 'whether specified or not,' the federal statute creating liability for aiding and abetting . . . 'is considered embodied in full in *every* federal indictment.'" *United States v. Lam Kwong-Wah*, 924 F.2d 298, 302 (D.C. Cir. 1991) (quoting *United States v. Michaels*, 796 F.2d 1112, 1118 (9th Cir. 1986)) (emphasis in *Michaels*). Thus, as long as the proffer allows the district court to conclude that a reasonable jury could find that Kelly aided and abetted the PWID cocaine, it suffices.

The proffer manifests that Kelly meant to aid the owner's possession of the cocaine by protecting it from loss. He stated that he kept a firearm in the apartment to protect himself and his property, *see* Tr. at 95 ("Yeah. I mean—yeah, if it came to it, yes. I'm mean, I'm in the house, I ain't going to let you come in there and take nothing, not while I'm in there."), and that he intended to return the drugs to their owner, *see id.* at 93. He further explained that he put the backpack in the apartment because his car had previously been broken into. *Id.* at 63-64,

---

[7]*See supra* note 1.

93. When asked whether he transferred the drugs to the apartment to protect them, Kelly responded that he "didn't give it that much thought . . . [but] fe[lt] like it's probably a better chance that the bag would be safe [sic] in the house than in the truck." *Id.* at 92-93. This is sufficient to show that Kelly intended to aid the owner's possession of the cocaine. Moreover, based upon the amount of cocaine involved (497.1 grams) as well as Kelly's admission that he believed the owner was going to sell the cocaine, *id.* at 89, a reasonable jury could also find that he intended to aid the owner's distribution of cocaine. *See United States v. Gaulteau*, 4 F.3d 1003, 1003 (D.C. Cir. 1993) ("intent to distribute may be inferred from possession of . . . a quantity of drugs larger than needed for personal use") (internal citations and quotation marks omitted).

Kelly next argues that the proffer was insufficient to support his guilty plea on count three—the section 924(c) count. In order to support a conviction under 18 U.S.C. § 924(c), the government must show beyond a reasonable doubt that (1) "during and in relation to" a "drug trafficking crime," (2) the defendant "use[d] or carrie[d] a firearm, or . . . in furtherance of . . . such crime, possesse[d] a firearm." 18 U.S.C. § 924(c)(1)(A). PWID cocaine, charged in count one, is a "drug trafficking crime" under the statute. *See id.* § 924(c)(2). Moreover, it is undisputed that the firearm belonged to Kelly. Regarding the nexus between the gun possession and the drug trafficking crime, we have identified a multi-factor test, including "the type of drug activity conducted; accessibility of the firearm; type of firearm; whether the firearm is stolen; whether the possession of the firearm is legal or illegal; whether the firearm is loaded; the proximity of the firearm to the drugs or drug profits; and the time and circumstances under which the firearm is found." *United States v. Wahl*, 290 F.3d 370, 376 (D.C. Cir. 2002) (citing *United States v. Ceballos-Torres*, 218 F.3d 409, 414-15 (5th Cir. 2000)). Relying on these factors, we concluded that there was sufficient evidence to sustain the

defendant's section 924(c) conviction where "[t]he firearm was on the top shelf of the entertainment center, in front of which [the defendant] was standing when the police entered[; t]he gun was loaded . . . [and] found in close proximity to 5.6 grams of cocaine base and a small amount of cash[;] the gun was recovered shortly after a drug transaction had taken place[; and the defendant] possessed the gun illegally." *Id.* at 376-77. Similarly here, "the FBI found the 497.1 grams of cocaine hydrochloride within 20 feet of appellant's illegally possessed, loaded, Glock 9-mm. gun, which was under the mattress in the bedroom when the FBI arrived . . . [and] agents also found $46,500 in cash [in the apartment]." Br. of Appellee at 28. These facts closely parallel those in *Wahl* and would allow a reasonable jury to find Kelly guilty of violating section 924(c).

Finally, Kelly argues that his plea was not knowing and voluntary because "[h]e was not aware of the necessary element that he needed to 'intend' to distribute the cocaine in order for him to be guilty of [possession with intent to distribute] and that 'intent to distribute' means a heightened level of scienter." Br. of Appellant at 20-21.[8] A plea "cannot be truly voluntary unless the defendant possesses an understanding of the law in relation to the facts." *McCarthy v. United States*, 394 U.S. 459, 466 (1969). The court must "have a colloquy with the defendant that would lead a reasonable person to believe that the defendant understood the nature of the charge." *United States v. Dewalt*, 92 F.3d 1209, 1212 (D.C. Cir. 1996) (internal quotation marks and citations omitted). "[A] defendant's ignorance of the mens rea element of the offense with which he is charged renders his guilty plea involuntary as a matter of constitutional law." *Id.* at 1211. Here Kelly's colloquy with the court manifests that Kelly

---

[8]Although we have found the proffers as to both counts sufficient to support them, Kelly's voluntariness challenge calls for a different inquiry.

understood the nature of the charge. He was advised by the court that to prove the PWID count, the government would have to show that he possessed cocaine and that he "did so with the intent to distribute it." Tr. at 33. Furthermore, as the government highlights, Kelly was "actively participating" during the discussion regarding the requisite intent to distribute the cocaine. Br. of Appellee at 24; Tr. at 45-65. Finally, the submission Kelly filed before the plea hearing explicitly recited all of the elements of PWID, including the intent to distribute, and noted in particular that "*an intent to distribute the narcotics personally is unnecessary* as long as distribution by someone is the end purpose of the possession." Kelly's Submission in Connection with Plea Hearing at 1-2, *United States v. Kelly*, Cr. No. 06-153 (D.D.C. Nov. 1, 2006) (emphasis in original). The colloquy—together with Kelly's pre-hearing filing—plainly would lead a reasonable jury to believe that Kelly understood the nature of the PWID charge. Because we hold that the district court did not plainly err, we need not decide whether, as the government argues, Kelly invited the errors of which he complains. *See* Br. of Appellee at 22-23.

For the foregoing reasons, we affirm the judgment of the district court.

*So ordered.*

ROGERS, *Circuit Judge*, concurring in the judgment: The Double Jeopardy Clause bars any person "subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. It provides three protections, against (1) prosecution for the same offense after acquittal; (2) a second prosecution for the same offense after conviction; and (3) multiple punishments for the same offense. *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969). This case concerns the interaction of the first of those protections with 18 U.S.C. § 924(c), which imposes an additional term of imprisonment for "any person who, during and in relation to any . . . drug trafficking crime . . . uses or carries a firearm, or who in furtherance of any such crime, possesses a firearm."

Appellant relies on *Brown v. Ohio*, 432 U.S. 161 (1977), and *United States v. Rosenberg*, 888 F.2d 1406 (D.C. Cir. 1989), for the proposition that the Double Jeopardy Clause serves a constitutional policy that "protects the accused from repeated litigation of facts underlying a prior acquittal, and from the prosecutor's desire to secure additional punishment where the government is dissatisfied with the result of the first trial," *Rosenberg*, 888 F.2d at 1409 (construing *Brown*, 432 U.S. at 165-66). Specifically, appellant contends that his possession of the same gun at the same location on the same date provided the basis for the § 924(c) charges in both the Maryland and D.C. indictments, and that the D.C. charge therefore was barred under the Double Jeopardy Clause. The federal indictment returned in Maryland charged appellant with conspiracy to distribute and possess with intent to distribute ("PWID conspiracy") cocaine and cocaine base between November 2000 and December 2004 in Maryland, the District of Columbia, and elsewhere, in violation of 21 U.S.C. § 846, use of a communications facility in connection therewith in violation of 21 U.S.C. § 843(b), and using, carrying, and possessing a firearm with respect to that conspiracy, in violation of 18 U.S.C. § 924(c) on September 2, 2004 in Maryland. The federal indictment returned in the

District of Columbia charged appellant with a violation of § 841 for possession with intent to distribute ("PWID") of cocaine on September 2, 2004 in D.C., and a violation of § 924(c) for possession, use, and carrying of a firearm with respect to the PWID. Appellant was acquitted on all charges in Maryland after a jury trial. *See* Judgement of Acquittal, Edward Kenneth Kelly, *United States v. Briscoe*, No. 04-0559 (D. Md. May, 12, 2006). Although the Assistant U.S. Attorney in D.C. was unfamiliar with the Maryland charges, the record indicated that the Maryland conspiracy encompassed the same time period as the D.C. charges. Further, appellant claims that the gun at issue was seized by the FBI at appellant's home in the District of Columbia on September 2, 2004. Thus, the question arose at the plea hearing whether, having lost its case against appellant in Maryland, the United States was pursuing appellant once again in the District of Columbia for the same gun offense of which he had been acquitted in Maryland.

The district court, *sua sponte*, raised the double jeopardy issue and continued the plea hearing to allow government and defense counsel to examine the issue. After a brief recess, the district court was unable to resolve whether the gun seized from appellant's home in the District of Columbia by the FBI was the same gun underlying the § 924(c) Maryland charge but concluded that the D.C. § 924(c) charge was not barred by the Double Jeopardy Clause because there were different predicate offenses charged in the Maryland and D.C. indictments, namely the § 846 PWID conspiracy as distinct from the § 841 PWID. This court, relying on *United States v. Felix*, 503 U.S. 378 (1992), affirms. Op. at 8. Although I agree that double jeopardy does not bar appellant's § 924(c) prosecution, *Felix*, alone, does not decide the question.

*Felix* was decided when the Supreme Court employed a different definition of "same offence" in the Double Jeopardy

Clause for successive prosecutions than for multiple punishments in the same prosecution. In *Grady v. Corbin*, 495 U.S. 508, 521 (1990)*,* the Supreme Court applied a same-conduct test for successive prosecutions, reasoning that the same-elements (or *Blockburger[1]*) test, which had been developed in the context of multiple punishments imposed in a single prosecution, was insufficient to account for the constitutional concerns raised by successive prosecutions. 495 U.S. at 518. Under *Grady*, "any subsequent prosecution in which the government, to establish an essential element of an offense charged in that prosecution, will prove conduct that constitutes an offense for which the defendant has already been prosecuted" was barred. *Id.* at 521 (citations omitted). *Felix* simply carved out an exception to *Grady* for conspiracy offenses, *see Felix*, 503 U.S. 390-91, and reaffirmed the rule that "a substantive crime and a conspiracy to commit that crime are not the 'same offence' for double jeopardy purposes," *id.* at 389 (citations omitted).

In appellant's case, the question is not whether the § 841 PWID charge was barred in light of the prior § 846 PWID conspiracy charge but whether double jeopardy barred the United States from charging appellant with violating § 924(c) twice based on his possession of the same gun on the same day in furtherance of overlapping drug offenses. Under *Grady*, a remand would be appropriate so that the district court could determine whether the gun-related conduct was the same in the Maryland and D.C. charges. *See United States v. Olano*, 507 U.S. 725, 732 (1993); *United States v. Broce*, 488 U.S. 563, 569 (1989); *United States v. Saro*, 24 F.3d 283, 286-87 (D.C. Cir. 1994); Op. at 6. *Grady* was overruled, however, by *United States v. Dixon*, 509 U.S. 688, 711-12 (1993), which held that "same offence" in the Double Jeopardy Clause could not mean

---

[1] *Blockburger v. United States*, 284 U.S. 299, 304 (1932).

4

two different things, and adopted the same-elements test described in *Blockburger* for both successive prosecutions and punishments, *id.* at 704. That test "inquires whether each offense contains an element not contained in the other; if not they are the 'same offence' and double jeopardy bars additional punishment and successive prosecution." *Id.* at 696.

Applying the same-elements test requires construction of *United States v. Wilson*, 160 F.3d 732 (D.C. Cir. 1998), and *United States v. Finley*, 245 F.3d 199 (2d Cir. 2001), on which appellant relies. In *Wilson*, this court held that two § 924(c) violations could not be charged even where the defendant had committed two predicate offenses, so long as there was only one "use" of the firearm. 160 F.3d at 749. In that case, although the predicate offenses did not merge, they could support only one conviction under § 924(c) because they were distinguished only by different *mens rea* rather than different conduct. *Id.* After *Wilson*, Congress broadened § 924(c) to punish possession in furtherance of a predicate offense, in addition to use and carrying. 105 Pub. L. 386, 112 Stat. 3469, (Nov. 13, 1998); *see also United States v. Wahl*, 290 F.3d 370, 375 (D.C. Cir. 2002); *Wilson*, 160 F.3d at 748-49. In *Finley*, the Second Circuit applied *Wilson* to the revised § 924(c), and held that "where a defendant is charged with the continuous constructive possession of a firearm in furtherance of a sale of part of a quantity of narcotics, coupled with continued possession of the remainder immediately following a sale," only one § 924(c) charge can be supported even though multiple predicate offenses have been committed. 245 F.3d at 208. The court emphasized that the "predicate offenses were simultaneous or nearly so." *Id.* at 207.

Together, *Wilson* and *Finley* instruct that under the possession prong of the statute, multiple § 924(c) charges may not be based on nearly simultaneous predicate offenses, and that

under the use prong, the United States may charge only as many § 924(c) violations as there are uses. *See Finley*, 245 F.3d at 208 n.7. While *Wilson* and *Finley* do not hold that double jeopardy bars Congress from authorizing multiple § 924(c) charges based on the same, or nearly the same, conduct, Op. at 8 n.5, they do construe the statute to authorize only one § 924(c) charge in certain circumstances, even if the defendant has committed more than one predicate offense. In such cases, whether Congress could authorize separate charges is besides the point; a second charge would be for the "same offence" under the Double Jeopardy Clause.

Because the two § 924(c) charges allege appellant's possession of the firearm in furtherance of two predicate offenses that are separate in time, place, and scope, Op. at 8 n.5, I concur in the judgment that appellant's claims under the Double Jeopardy Clause, Federal Rule of Criminal Procedure 11, and for ineffective assistance of counsel each fail. Op. at 8-9. However, because the government prosecuted appellant on the second § 924(c) charge after he was acquitted of the first § 924(c) charge, it is worth noting that appellant does not raise a collateral estoppel claim under *Ashe v. Swenson*, 397 U.S. 436 (1970). To do so appellant would have needed to show that an issue of fact, relevant to the D.C. charges, was finally determined in the Maryland case, *see Ashe*, 397 U.S. at 443-44; *see also Dixon*, 509 U.S. at 710 n.15, and appellant does not maintain that the Maryland jury necessarily grounded its not-guilty PWID conspiracy verdict on a finding that appellant did not possess drugs with intent to distribute them in the District of Columbia, *see Ashe*, 397 U.S. at 444.