KAREN LeCRAFT HENDERSON, Circuit Judge,
concurring in part and dissenting in part:
“To establish ineffective assistance of counsel, a criminal defendant must show ... that his lawyer made errors so serious that counsel was not functioning as the counsel guaranteed ... by the Sixth Amendment, and that ... there is a reasonable probability that, but for counsel’s *36 unprofessional errors, the result of the proceeding would have been different.” United States v. Kelly, 552 F.3d 824, 829 (D.C.Cir.2009) (ellipses in original; internal quotation marks omitted). I respectfully dissent from the remand for an evidentiary hearing on the sixth amendment claim because I believe the “trial record alone conclusively shows” the representation provided to Laureys was not deficient and he suffered no prejudice. See Per Curiam Opinion at 34 (quoting United States v. Rashad, 331 F.3d 908, 909-10 (D.C.Cir.2003)).
Laureys contends that his trial counsel was ineffective by, inter alia, not calling Frederick Berlin, a professor at Johns Hopkins University School of Medicine and founder of a sexual disorders clinic there, to testify at trial. The record indicates, however, that Berlin had not finished his evaluation of Laureys and was not prepared to testify at the time of the trial. At a status conference on June 25, 2009, Laureys’s trial counsel informed the court that he was trying to arrange for a psychosexual evaluation of Laureys. Gov’t App. Tab 10. At subsequent status and pretrial conferences held over eight months — from August 10, 2009 to April 7, 2010 — Laureys’s trial counsel repeatedly informed the court that Berlin had not completed his evaluation of Laureys. Gov’t App. Tabs 11-14. At the April 7, 2010 conference, trial counsel informed the court that Berlin would not complete his evaluation until August 2010. The court then determined the trial could be delayed no longer and ordered trial counsel to produce, within ten days, a letter, affidavit or other writing from Berlin assuring the court of his testimony in support of the defense’s theory. Gov’t App. Tab 14. The case proceeded to trial when trial counsel failed to do so. That Laureys’s trial counsel did not call an expert witness who, according to the record, was not prepared to testify hardly renders his representation deficient. That Laureys’s trial counsel sought to use Berlin’s testimony for a purpose different from the use his appellate counsel would have made of it does not change the fact that, according to the record, Berlin never completed his evaluation of Laureys and was not prepared to testify. In his reply brief, Laureys asserts that “Dr. Berlin has confirmed to us that he believed Mr. Laureys is suffering from paraphilia; that he formed that opinion before trial ... and that he would have testified to that effect,” Reply Br. 14, but Laureys provides nothing — such as an affidavit from Berlin — to support his assertion.
Even assuming arguendo that the failure to call Berlin to testify was deficient, there is no “reasonable probability that, [had Berlin testified], the result of the proceeding would have been different.” Kelly, 552 F.3d at 829. On appeal, Laureys claims that Berlin would have opined that Laureys is a paraphiliac and would have explained that a paraphiliac is someone who suffers from “ ‘recurrent, intense sexually arousing fantasies, sexual urges, or behaviors generally involving 1) nonhuman objects, 2) the suffering or humiliation of oneself or one’s partner, or 3) children or other nonconsenting persons, that occur over a period of at least 6 months ... [and that] cause clinically significant distress or impairment in social, occupational, or other important areas of functioning.’ ” United States v. Carta, 592 F.3d 34, 38 (1st Cir.2010) (ellipsis and alteration in Carta) (quoting Am. Psychiatric Ass’n, Diagnostic & Statistical Manual of Mental Disorders 522-23 (4th ed.2000)); see Appellant’s Br. 43 n. 116. In addition to explaining paraphilia, Laureys contends Berlin would have testified that a “paraphiliac can suffer from pedophilia and yet maintain sexual relations with adults.” Id. at 43. Finally, *37 according to Laureys, Berlin would have testified that paraphiliacs have a tendency to use the internet “to engage in wildly inappropriate remarks” and “to engage in fantastic sexual discussions with anonymous correspondents.” Id. at 44-45.
I cannot fathom how Berlin’s proposed testimony could have possibly aided Laureys’s case. A description of paraphilia would have simply emphasized Laureys’s “ ‘recurrent, intense sexually arousing fantasies, sexual urges, or behaviors generally involving ... children or other nonconsenting persons.’ ” Carta, 592 F.3d at 38 (quoting Am. Psychiatric Ass’n, Diagnostic & Statistical Manual of Mental Disorders 522-23 (4th ed.2000)). Nothing in the quoted description of paraphilia from the Diagnostic and Statistical Manual of Mental Disorders suggests an inclination toward homosexuality. Nor is there any reason to believe Berlin’s testimony that a paraphiliae can suffer from pedophilia but maintain sexual relations with adults would have helped Laureys’s case. Nothing in Berlin’s purported testimony calls into question the jury’s conclusion that Laureys intended to have sexual relations with the 9-year-old girl. That Berlin’s testimony might have led the jury to conclude that Laureys also intended to have sexual relations with Jim P does not create “a reasonable probability that ... the result of the proceeding would have been different.” Kelly, 552 F.3d at 829 (internal quotation marks omitted). Finally, Berlin’s testimony about the internet tendencies of paraphiliacs would have strengthened the Government’s — not Laureys’s — case because Laureys went well beyond using the internet to make inappropriate remarks or engage in fantastic sexual discussions with anonymous correspondents. He took the significant further step of arranging to meet Jim P — and, a reasonable jury could conclude, the 9-year-old girl — and driving to the location Jim P gave him.
Finally, and crucially, any marginal benefit Laureys might have derived from Berlin’s testimony could never, in my view, erase the irremediable damage Laureys did through his own testimony. I believe there is no reasonable probability that Berlin’s proposed testimony — as weak as it is — would have led any reasonable juror who heard Laureys’s disturbing and graphic testimony to acquit him. By testifying, Laureys was truly the author of his own misfortune.