# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued May 10, 2011               Decided August 19, 2011

No. 10-3047

UNITED STATES OF AMERICA,
APPELLEE

v.

BRANDON LAUREYS,
APPELLANT

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:09-cr-00106)

———

*Stephen C. Leckar*, appointed by the court, argued the cause and filed the briefs for appellant.

*Patricia A. Heffernan*, Assistant U.S. Attorney, argued the cause for appellee. With her on the brief were *Ronald C. Machen*, *Jr.,* U.S. Attorney, and *Roy W. McLeese III*, *Julieanne Himelstein*, and *Amy H. Zubrensky*, Assistant U.S. Attorneys.

Before: HENDERSON, BROWN and KAVANAUGH, *Circuit Judges*.

Opinion for the Court filed PER CURIAM.

Opinion concurring in part and dissenting in part filed by *Circuit Judge* HENDERSON.

Opinion dissenting in part filed by *Circuit Judge* BROWN.

PER CURIAM: Brandon Laureys appeals his conviction for attempted enticement of a minor under 18 U.S.C. § 2422(b) and for traveling across state lines with intent to engage in illicit sexual conduct under § 2423(b). Laureys argues that the evidence was insufficient to support his conviction and that his trial counsel provided constitutionally ineffective assistance in violation of the Sixth Amendment. Laureys also challenges the conditions of supervised release the district court imposed at sentencing. We reject Laureys's challenge to the sufficiency of the evidence and to the conditions of supervised release. We remand for an evidentiary hearing on his ineffective assistance claim.

I

The present case arises from Laureys's online communication in 2008 with Detective Timothy Palchak, who was impersonating a child molester with access to a minor. Unfortunately, this was not Laureys's first encounter with Palchak.

Laureys first communicated with Palchak in 2006, in a Yahoo chat room. Palchak was posing as a twelve-year-old girl home alone. Laureys—then 20 years old—drove to an address provided by the "girl" and was promptly arrested. Laureys pled guilty to enticement of a minor under D.C. law, and was sentenced to 36 months with all but 8 months suspended.

Laureys was out on probation when the events relevant to this case took place. In November 2008, Palchak—this time playing the part of an adult male—nabbed Laureys again. Palchak's alter ego, "Jim," employing the username "DaughterLover_Maryland," advertised on an "Incest Forum Meeting Place" at IncestTaboo.com that he was a 38-year-old white male "into no limit fun." His advertisement bore the warning "Discreet only." The next day Laureys responded to Jim's advertisement via Yahoo private message. After exchanging their "stats" (age, sex, and location), the men started discussing their sexual interest in young girls. When "Jim" asked "what ages are your fav[orites]?" Laureys responded, "9–11 or 12 maybe . . . maybe 8. maybe 13 . . . [I] can[']t pick. . . . love [th]em all lol."[1] When Laureys learned that Jim's girlfriend frequently brought her nine-year-old daughter over to Jim's place and that Jim had been "messing around" with the girl, Laureys expressed excitement, requested photos of the girl, and ultimately asked to be invited over to "help with the little girl." Laureys assured Jim he would "make sure she wants to do it," and offered to "watch her an[d] [Jim] [un]til she feels more comfortable." When Jim said he "would love to see her with another" man, Laureys replied enthusiastically that he "would def[initely] be all about that," adding that he would "teach her to take two at once." After Jim electronically sent a girl's picture to Laureys during the chat, Laureys expressed excitement, told Jim "you . . . NEED to let me hang out with her[,] man," and asked him in explicit terms about his sexual conduct with the girl depicted in the photograph.

---

[1] *See* OXFORD ENGLISH DICTIONARY ONLINE (defining "lol," "the initial letters of *l*aughing *o*ut *l*oud," as an interjection used "[o]riginally and chiefly in the language of electronic communications . . . to draw attention to a joke or humorous statement, or to express amusement"), http://www.oed.com/view/Entry/291168 (last visited August 8, 2011).

In the course of this conversation, Laureys and "Jim" arranged to meet each other. Jim initially suggested "get[ting] a beer first to make sure we are comfortable[,] then hav[ing] fun at my [place]." Instead, Laureys proposed meeting at Jim's home "if you got anything fun we could watch or something while we're there." Eventually, the men arranged to meet each other at an address near Jim's apartment, and Jim asked Laureys to call him.

During a gap of more than two minutes in the time-stamped chat transcript, Laureys called Jim. Laureys and Palchak agree there was no mention of the girl during the unrecorded phone call. Laureys testified at trial that in the phone call he reassured Jim he was discreet and said "I just want a quick blow job and go. My girlfriend doesn't even know that I still mess with guys." According to Laureys, Jim responded, "Okay, we're on the same page." Palchak testified, however, that during the phone call, Jim asked Laureys if he was discreet, the men exchanged physical descriptions again, and Laureys described the car he would be driving.

The men quickly ended their chat, and Laureys left in his car to meet Jim. When he reached the address Jim had provided, Laureys was arrested.

At trial, Laureys testified in his own defense, and Palchak testified for the prosecution. At the close of all the evidence, Laureys moved for a judgment of acquittal, and the district court denied the motion.

The jury convicted on all counts. The district court sentenced Laureys to ten years (the mandatory minimum) under 18 U.S.C. § 2422(b) for enticement of a minor, five years (concurrent) under § 2423(b) for traveling in interstate commerce to engage in illicit sexual conduct, and an additional

10 years (consecutive) as required by § 2260A for committing these crimes as a registered sex offender. Laureys raised no objection to the sentence or to the terms of supervised release the district court imposed at sentencing.

## II

Laureys argues the Government's evidence was insufficient to prove his intent to persuade a minor to engage in sexual activity under § 2422(b) and to prove his intent to engage in sexual conduct with a minor under § 2423(b). "We review a trial court's denial of a motion for judgment of acquittal *de novo*, considering the evidence in the light most favorable to the government and determining whether, so read, it is sufficient to permit a rational trier of fact to find all of the essential elements of the crime beyond a reasonable doubt." *United States v. Kayode*, 254 F.3d 204, 212 (D.C. Cir. 2001) (alterations omitted) (quoting *United States v. Harrington*, 108 F.3d 1460, 1464 (D.C. Cir. 1997)). The evidence in this case may be susceptible of more than one interpretation, but we cannot say it was insufficient for the jury to find the necessary intent beyond a reasonable doubt.

## A

Laureys devotes just two pages in each of his briefs to the sufficiency of the evidence. His only argument against both counts is that the evidence does not prove his intent to have sex with a minor. According to Laureys, the transcript of his chat shows he only wanted a quick and legal liaison with "Jim." Laureys's references to the fictional girl were, he says, pure fantasy. Laureys points to certain turns of phrase, such as "down low," "discreet," and "perv out" that he says are consistent with his intent to engage in same-sex intercourse with an adult male, but not an underage girl. Even if we were to

accept the connotations Laureys attributes to these phrases, and which he argued to the jury, we would have no basis for reversing the jury's conviction. The rest of the evidence, viewed in the light most favorable to the Government, permitted the jury reasonably to find Laureys meant what he said, whether or not he also intended to have sex with Jim.

Laureys is a self-described "bisexual . . . sexual addict" with a "sexual attraction to children" that he expects to "live with the rest of [his] life." Tr. 5/26/2010, at 316, 373. Laureys admits he intended to have sex with a fictitious twelve-year-old girl in 2006, *id.* at 318, and he responded to DaughterLover_Maryland's advertisement on a website that he admitted to frequenting "as part of [his] sexual attraction" to little girls, *id.* at 365—a website Detective Palchak described as a meeting place for persons seeking sex with children. Tr. 5/25/2010, at 144. Laureys chatted in explicit terms about sexual conduct with a particular nine-year-old girl Jim said frequented his apartment. Laureys asked for pictures of the girl and pleaded with Jim, "you . . . NEED to let me hang out with her[,] man." Laureys then arranged to meet Jim at his apartment. Viewed together, this evidence was more than sufficient to support the jury's findings that Laureys attempted to persuade Jim to grant him sexual access to a child and then travelled to the District for the purpose of engaging in sexual conduct with her.

Judge Brown's dissent raises two additional arguments concerning a jury instruction pertaining to § 2422(b) and the evidence required for a conviction under § 2423(b). We address each in turn.

B

The dissent objects *sua sponte* to the district court's instruction that the jury could convict under § 2422(b) if the Government proved Laureys knowingly attempted to persuade an adult to arrange for a child to engage in sexual activity. According to the dissent, § 2422(b) requires intent to persuade the minor herself, not an adult intermediary. That statute provides,

> Whoever, using . . . any . . . means of interstate . . . commerce . . . knowingly persuades, induces, entices, or coerces any individual who has not attained the age of 18 years, to engage in prostitution or any sexual activity for which any person can be charged with a criminal offense, or attempts to do so, shall be . . . imprisoned not less than 10 years or for life.

18 U.S.C. § 2422(b).

We need not wade into this question of statutory interpretation because Laureys has not raised it.[2] Laureys asked "Jim" in no uncertain terms to grant him access to the girl Jim claimed to be molesting, and that is the theory under which the jury convicted him. It is not our duty to sift the trial record for novel arguments a defendant could have made but did not. *See Potter v. District of Columbia*, 558 F.3d 542, 553 (D.C. Cir. 2009) (Williams, J., concurring) ("[J]udges 'are not like pigs, hunting for truffles buried in briefs' or the record."

---

[2] As the Government's brief notes, Laureys "does not dispute that the statute is violated where a defendant communicates with an adult with access to the minor rather than directly with the minor." Appellee's Br. at 30 n.16. Indeed, Laureys's counsel declined Judge Brown's invitation at oral argument to make an issue of the instruction. Oral Arg. 11:48–12:45.

(quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991))). Moreover, the instruction at issue was proposed jointly by the defense and the prosecution, Dist. Ct. Docket No. 30, at 4–5, and "[i]f a defendant invites error by the district court, he is 'barred from complaining about it on appeal.'" *United States v. Ginyard*, 215 F.3d 83, 88 (D.C. Cir. 2000) (quoting *United States v. Harrison*, 103 F.3d 986, 992 (D.C. Cir. 1997)).

Even if Laureys had properly challenged on appeal the district court's formulation of the requisite intent, our review would be for plain error because he did not object to the jury instructions at trial. *See United States v. Bryant*, 523 F.3d 349, 353 (D.C. Cir. 2008). Under that standard, Laureys would have to establish "(1) a legal error that was (2) plain (a term that is synonymous with clear or obvious), and that (3) affected his substantial rights." *Id.* (quotation marks and alterations omitted). "Even if these three conditions are met, we will correct a plain error as a matter of discretion only if the error seriously affected the fairness, integrity or public reputation of judicial proceedings." *Id.* at 353–54 (quotation marks and alterations omitted).

Laureys cannot make the basic threshold showing of plain error. "Generally an error is plain if it contradicts circuit or Supreme Court precedent." *In re Sealed Case*, 573 F.3d 844, 851 (D.C. Cir. 2009). The district court's instructions contradicted no precedents of this Court or the Supreme Court. Rarely do we find an error to be plain where "this court has not ruled on the question." *United States v. Thomas*, 896 F.2d 589, 591 (D.C. Cir. 1990). As the dissent has aptly pointed out in another context, "issues of first impression present plain error only when they tread upon 'a well-established constitutional or legal principle.'" *United States v. Burroughs*, 613 F.3d 233, 248 (D.C. Cir. 2010) (Brown, J., dissenting) (quoting *United*

*States v. Blackwell*, 694 F.2d 1325, 1342 (D.C. Cir. 1982)). Even if the dissent's interpretation of § 2422(b) is correct—a question we need not consider—we can hardly say it is "well-established." To the contrary, every circuit to consider the issue has concluded a defendant can violate § 2422(b) by communicating with an adult intermediary rather than a child or someone believed to be a child. *See United States v. Berk*, No. 09-2472, 2011 U.S. App. LEXIS 15501, at *19 (1st Cir. July 27, 2011); *United States v. Lanzon*, 639 F.3d 1293, 1299 (11th Cir. 2011); *United States v. Douglas*, 626 F.3d 161, 164–65 (2d Cir. 2010); *United States v. Nestor*, 574 F.3d 159, 160–62 (3d Cir. 2009); *United States v. Spurlock*, 495 F.3d 1011, 1013–14 (8th Cir. 2007). Under the law of those circuits, "inducing" a minor to engage in sexual activity does not necessarily require direct communication with the minor; a minor's "assent might be obtained, for example, by persuading a minor's adult guardian to lead a child to participate in sexual activity." *Douglas*, 626 F.3d at 164; *see, e.g.*, *United States v. Lee*, 603 F.3d 904, 913 (11th Cir. 2010); *Nestor*, 574 F.3d at 162 n.4. We do not have to determine these courts are correct to determine their view of the law is not plainly erroneous.

C

According to Judge Brown, we should also reverse Laureys's conviction under § 2423(b) because the evidence is insufficient to prove Laureys believed he was going to meet a child at Jim's apartment. The statute provides that "[a] person who travels in interstate commerce . . . for the purpose of engaging in any illicit sexual conduct with another person shall be . . . imprisoned not more than 30 years." 18 U.S.C. § 2423(b). The dissent observes that, in response to a question, Palchak admitted there was no implication in the chat that the girl would be present at the initial meeting with Jim. Op. of Brown, J., at 14. Even so, the jury reasonably found Laureys's

trip to meet Jim was for the purpose of engaging in illicit sexual conduct with a minor. Reading the chat transcript in the light most favorable to the Government, it supports a reasonable inference that Jim would grant Laureys's request to let him "hang out" with the girl, if an initial meeting between him and Jim was satisfactory. To that end, Jim suggested, "maybe we could get a beer first to make sure we are comfortable [and] then have fun at my [place]." Likewise, Laureys blocked his cell phone number "[just] [un]til we actually talk or [whatever]." A jury could reasonably conclude that this maneuvering was in anticipation of the intended sexual conduct with a minor.

## III

Laureys claims he received ineffective assistance of counsel because his trial lawyer failed to call some potential witnesses to testify in his defense. Specifically, Laureys says his lawyer should have secured the testimony of Laureys's psychologist and two men with whom Laureys had engaged in sex-oriented online chats. This testimony, Laureys argues, would have proven he lacked the requisite intent for each of his convictions.

> In order to succeed on a Sixth Amendment claim of ineffective assistance of counsel, a defendant must show two things: (1) that counsel's performance was deficient, and (2) that the deficient performance prejudiced the defense. To establish deficiency, he must show his counsel's representation fell below an objective standard of reasonableness. To establish prejudice, he must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.

*United States v. Anderson*, 632 F.3d 1264, 1268 (D.C. Cir. 2011) (quotation marks, citations, and alteration omitted).

When a colorable claim of ineffective assistance is made for the first time on direct appeal, this Court generally will remand the claim for an evidentiary hearing "unless the trial record alone conclusively shows that the defendant either is or is not entitled to relief." *United States v. Rashad*, 331 F.3d 908, 909–10 (D.C. Cir. 2003) (quotation marks omitted). Applying that standard, we remand Laureys's ineffective assistance claims for analysis by the district court in the first instance.

IV

The district court sentenced Laureys to a ten-year term of supervised release following imprisonment. Laureys challenges the conditions of supervised release that prohibit him, without the probation office's prior approval, from loitering in arcades and parks, among other places where children congregate; possessing "any type of camera or video recording device"; and "patroniz[ing] any place where pornography or erotica can be accessed." Laureys also challenges the requirements that he keep a log of all internet addresses he accesses and that he consent to disclosure to his employer of the computer-related restrictions.

A sentencing court has discretion to impose any condition of supervised release that is "reasonably related" to "the nature and circumstances of the offense"; "the history and characteristics of the defendant"; the deterrence of criminal conduct; the protection of the public from the defendant; and the effective provision of educational, vocational, medical, or correctional services to the defendant; provided the condition is consistent with the Sentencing Guidelines and "involves no greater deprivation of liberty than is reasonably necessary." 18

U.S.C. §§ 3583(d), 3553(a); *see United States v. Burroughs*, 613 F.3d 233, 239–40 (D.C. Cir. 2010).

Because Laureys did not object at sentencing to the conditions of his supervised release, our review is for plain error. *See Burroughs*, 613 F.3d at 240. On plain error review, we will vacate a condition of supervised release only if it is "plainly out of sync with the statutory goals enumerated in § 3553(a)." *Id.* Under that standard, each of Laureys's challenges must fail.

His challenges to the restrictions on loitering in arcades and parks and on possessing a camera are foreclosed by *United States v. Love*, a child pornography case with similar facts to Laureys's, in which we upheld the same conditions on plain error review. 593 F.3d 1, 14 (D.C. Cir. 2010) (citing *United States v. Sullivan*, 451 F.3d 884 (D.C. Cir. 2006)). Especially in light of Laureys's requests for photographs of his child-victims, we cannot conclude these conditions are "plainly out of sync" with "the nature and circumstances of the offense and the history and characteristics of the defendant," 18 U.S.C. §§ 3583(d), 3553(a)(1), and with the need "to protect the public from further crimes of the defendant," *id.* § 3553(a)(2)(C).

For the same reason, Laureys cannot succeed in his challenge to the ban on patronizing any place where pornography can be accessed. In *United States v. Sullivan*, we dismissed as "meritless" a challenge to the same condition by a defendant convicted of possessing child pornography. 451 F.3d at 887, 896. Although Laureys's crimes are different, some studies have found a connection between pornography and sex crimes, *see Amatel v. Reno*, 156 F.3d 192, 199–201 (D.C. Cir. 1998); *see also United States v. Sebastian*, 612 F.3d 47, 52 (1st Cir. 2010) (noting a possible "link between

recidivism of sexual offenders and exposure to pornography"). Moreover, Laureys's suggestion to Jim that they meet at his place "if you got anything fun we could watch" supports a reasonable inference that pornography is relevant to Laureys's attempted predations. A condition of supervised release that limits Laureys's access to pornography is thus not "plainly out of sync" with the § 3553(a) factors. Contrary to Laureys's interpretation of our decision in *Love*, that case does not compel a different result. We vacated the condition in *Love*, because it appeared only in the written judgment, 593 F.3d at 11, and "the written judgment form is a nullity to the extent it conflicts with the previously pronounced sentence," *id.* at 9 (quoting *United States v. Booker*, 436 F.3d 238, 245 (D.C. Cir. 2006)). In the absence of any precedent "that is even arguably inconsistent" with the application of that condition to a child predator, Laureys cannot show that the district court plainly erred. *Sullivan*, 451 F.3d at 896.

Finally, the computer-related conditions of supervised release are not plainly erroneous. For good reason, Laureys does *not* challenge the most restrictive of these—a total ban on the possession or use of a computer with internet access without prior approval from the probation office. We upheld the same condition on review for abuse of discretion in *Love*. 593 F.3d at 12. Because the defendant in that case had also "solicited sex with Palchak's fictitious daughter" online, we concluded the broad restriction on internet access "[was] properly tailored to the circumstances of the offense and [the defendant's] background, and it [was] reasonably necessary to deter future misconduct and to protect children." *Id.* The more limited restrictions Laureys *does* challenge come nowhere close to plain error. We vacated a similar log-keeping requirement in *United States v. Burroughs*, because "Burroughs did not use a computer to facilitate his crimes." 613 F.3d at 242. But Laureys did. In the offenses underlying

both the present case and his 2006 conviction, Laureys used the internet to facilitate criminal sexual conduct with minors. That Laureys will need the probation office's permission to use the internet is likely relevant to an employer's decision to hire him. So too are the requirements that he log his internet access and that he "submit to periodic unannounced examinations of . . . any computer accessed by him"—a condition Laureys does not appeal. "We see no reason why potential employers should not be made aware of [these] fact[s]." *Burroughs*, 613 F.3d at 246.

## V

For the foregoing reasons, we reject Laureys's challenges to his conviction and to the conditions imposed on his term supervised release, but we remand for an evidentiary hearing on whether his trial counsel provided ineffective assistance.

*So ordered.*

KAREN LECRAFT HENDERSON, *Circuit Judge*, concurring in part and dissenting in part:

"To establish ineffective assistance of counsel, a criminal defendant must show . . . that his lawyer made errors so serious that counsel was not functioning as the counsel guaranteed . . . by the Sixth Amendment, and that . . . there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *United States v. Kelly*, 552 F.3d 824, 829 (D.C. Cir. 2009) (ellipses in original; internal quotation marks omitted). I respectfully dissent from the remand for an evidentiary hearing on the sixth amendment claim because I believe the "trial record alone conclusively shows" the representation provided to Laureys was not deficient and he suffered no prejudice. *See* Per Curiam Opinion at 11 (quoting *United States v. Rashad*, 331 F.3d 908, 909–10 (D.C. Cir. 2003)).

Laureys contends that his trial counsel was ineffective by, *inter alia*, not calling Frederick Berlin, a professor at Johns Hopkins University School of Medicine and founder of a sexual disorders clinic there, to testify at trial. The record indicates, however, that Berlin had not finished his evaluation of Laureys and was not prepared to testify at the time of the trial. At a status conference on June 25, 2009, Laureys's trial counsel informed the court that he was trying to arrange for a psychosexual evaluation of Laureys. Gov't App. Tab 10. At subsequent status and pretrial conferences held over eight months—from August 10, 2009 to April 7, 2010—Laureys's trial counsel repeatedly informed the court that Berlin had not completed his evaluation of Laureys. Gov't App. Tabs 11-14. At the April 7, 2010 conference, trial counsel informed the court that Berlin would not complete his evaluation until August 2010. The court then determined the trial could be delayed no longer and ordered trial counsel to produce, within ten days, a letter, affidavit or other writing from Berlin assuring the court of his testimony in support of the defense's theory. Gov't App. Tab 14. The case proceeded to trial when trial counsel failed to do

so. That Laureys's trial counsel did not call an expert witness who, according to the record, was not prepared to testify hardly renders his representation deficient. That Laureys's trial counsel sought to use Berlin's testimony for a purpose different from the use his appellate counsel would have made of it does not change the fact that, according to the record, Berlin never completed his evaluation of Laureys and was not prepared to testify. In his reply brief, Laureys asserts that "Dr. Berlin has confirmed to us that he believed Mr. Laureys is suffering from paraphilia; that he formed that opinion before trial . . . and that he would have testified to that effect," Reply Br. 14, but Laureys provides nothing—such as an affidavit from Berlin—to support his assertion.

Even assuming *arguendo* that the failure to call Berlin to testify was deficient, there is no "reasonable probability that, [had Berlin testified], the result of the proceeding would have been different." *Kelly*, 552 F.3d at 829. On appeal, Laureys claims that Berlin would have opined that Laureys is a paraphiliac and would have explained that a paraphiliac is someone who suffers from " 'recurrent, intense sexually arousing fantasies, sexual urges, or behaviors generally involving 1) nonhuman objects, 2) the suffering or humiliation of oneself or one's partner, or 3) children or other nonconsenting persons, that occur over a period of at least 6 months . . . [and that] cause clinically significant distress or impairment in social, occupational, or other important areas of functioning .' " *United States v. Carta*, 592 F.3d 34, 38 (1st Cir. 2010) (ellipsis and alteration in *Carta*) (quoting Am. Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders 522-23 (4th ed. 2000)); *see* Appellant's Br. 43 n.116. In addition to explaining paraphilia, Laureys contends Berlin would have testified that a "paraphiliac can suffer from pedophilia and yet maintain sexual relations with adults." *Id*. at 43. Finally, according to Laureys, Berlin would have testified that paraphiliacs have a tendency to use the internet "to engage in wildly inappropriate remarks" and

"to engage in fantastic sexual discussions with anonymous correspondents." *Id.* at 44-45.

I cannot fathom how Berlin's proposed testimony could have possibly aided Laureys's case. A description of paraphilia would have simply emphasized Laureys's " 'recurrent, intense sexually arousing fantasies, sexual urges, or behaviors generally involving . . . children or other nonconsenting persons.' " *Carta*, 592 F.3d at 38 (quoting Am. Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders 522-23 (4th ed. 2000)). Nothing in the quoted description of paraphilia from the Diagnostic and Statistical Manual of Mental Disorders suggests an inclination toward homosexuality. Nor is there any reason to believe Berlin's testimony that a paraphiliac can suffer from pedophilia but maintain sexual relations with adults would have helped Laureys's case. Nothing in Berlin's purported testimony calls into question the jury's conclusion that Laureys intended to have sexual relations with the 9-year-old girl. That Berlin's testimony might have led the jury to conclude that Laureys also intended to have sexual relations with Jim P does not create "a reasonable probability that . . . the result of the proceeding would have been different." *Kelly*, 552 F.3d at 829 (internal quotation marks omitted). Finally, Berlin's testimony about the internet tendencies of paraphiliacs would have strengthened the Government's—not Laureys's—case because Laureys went well beyond using the internet to make inappropriate remarks or engage in fantastic sexual discussions with anonymous correspondents. He took the significant further step of arranging to meet Jim P—and, a reasonable jury could conclude, the 9-year-old girl—and driving to the location Jim P gave him.

Finally, and crucially, any marginal benefit Laureys might have derived from Berlin's testimony could never, in my view, erase the irremediable damage Laureys did through his own testimony. I believe there is no reasonable probability that Berlin's proposed testimony—as weak as it is—would have led

any reasonable juror who heard Laureys's disturbing and graphic testimony to acquit him.  By testifying, Laureys was truly the author of his own misfortune.

BROWN, *Circuit Judge*, dissenting in part: The district court instructed a jury to convict Brandon Laureys of attempted enticement of a *child* if the Government proved Laureys tried to persuade an *adult* to grant him access to a minor. The district court also allowed the jury to convict Laureys of crossing state lines to engage in sexual conduct with a minor, absent any evidence Laureys expected the fictitious child to be present at his destination. Because the jury instruction was plainly erroneous and the evidence insufficient as a matter of law, I would reverse Laureys's convictions and his twenty-year prison sentence.[1]

I

Count One of the indictment charged Laureys with using the internet in an attempt to persuade a minor to engage in criminal sexual activity. The statute under which he was convicted provides,

> Whoever, using . . . any . . . means of interstate . . . commerce . . . knowingly persuades, induces, entices, or coerces any individual who has not attained the age of 18 years, to engage

---

[1] Although I would not reach Laureys's ineffective assistance claim or his challenges to the conditions of supervised release, Judge Henderson's partial dissent means my vote is necessary to decide the ineffective assistance claim. Because I agree with the lead opinion's statement of the law on that point, I join that portion of the opinion to break the tie and remand for an evidentiary hearing on Laureys's ineffective assistance claim. *See generally* David Post & Steven C. Salop, *Rowing Against* Tidewater*: A Theory of Voting by Multijudge Panels*, 80 GEO. L.J. 743, 745 (1992) (arguing issue-by-issue voting is more consistent than outcome voting "with an appellate court's role of providing guidance to lower courts and the community as a whole as to the legal consequences of specific actions").

> in . . . any sexual activity for which any person can be charged with a criminal offense, or attempts to do so, shall be . . . imprisoned not less than 10 years or for life.

18 U.S.C. § 2422(b). Each verb of the statutory *actus reus* ("persuades, induces, entices, or coerces") has a person as its object, and the statutory text leaves no doubt but that the personal object must be a minor.

The district court nevertheless instructed the jury to convict Laureys under § 2422(b) if he "intended to persuade an *adult* to cause a minor to engage in unlawful sexual activity." Dist. Ct. Docket No. 52, at 15–16 (emphasis added). The district court emphasized that "[d]irect communication with a child is unnecessary," because "[t]he government must only prove that the defendant believed that he was communicating with someone who could arrange for the child to engage in unlawful sexual activity." *Id.* at 15. These jury instructions thwart the plain meaning of § 2422(b) by replacing the statutory object ("any individual who has not attained the age of 18 years") with its opposite ("an adult").

On appeal, Laureys argues § 2422(b) requires intent to persuade a *minor*, Appellant's Br. at 36, but he does not directly confront the erroneous jury instruction. Nor did he object to it in the district court. As the court explains, we do not ordinarily consider legal arguments that are forfeited in the district court and on appeal. Maj. Op. at 7–8. But this is not an ordinary case of forfeiture. Federal Rule of Criminal Procedure 52(b) provides, "[a] plain error that affects substantial rights may be considered even though it was not brought to the court's attention." We invoke Rule 52(b), for example, "when the weakness of the evidence against defendant indicates that a serious injustice was done." *United States v. Rhodes*, 886 F.2d 375, 379 (D.C. Cir. 1989) (quoting

*United States v. Baker*, 693 F.2d 183, 187 (D.C. Cir. 1982)). Thus, "even though an issue was not raised either at trial or on appeal," if it "is one which affects substantial rights and seriously affects the fairness of the judicial proceedings, then we should reverse [the defendant's] conviction on our own motion." *Id.* Under that standard, I would reverse Laureys's conviction for enticement of a minor, as it was based on a plainly erroneous jury instruction. *See United States v. Alston*, 551 F.2d 315, 320 n.23 (D.C. Cir. 1976) ("Failure on the part of a trial court in a criminal case to instruct on all essential questions of law involved in the case, whether requested or not would clearly affect substantial rights within the meaning of Rule 52(b)." (quotation marks omitted)). That Laureys's trial counsel shares responsibility with the Government for proposing an erroneous instruction does not mean we must close our eyes to the district court's plain error. *See United States v. Wiggins*, 530 F.2d 1018, 1020 (D.C. Cir. 1976) (noting that plain error review is appropriate even where the defendant's trial counsel "specifically requested and approved" the challenged jury instruction).

The court does not attempt to defend the district court's statement of the law on the merits, and there is no dispute that—if it is erroneous—the district court's jury instruction was prejudicial.[2] The court disagrees only with my conclusion that any error was plain. Maj. Op. at 8–9.

---

[2] Had the jury been correctly instructed, it could not reasonably have found Laureys guilty under § 2242(b). Even if Laureys intended at some point in the future to entice the fictitious child herself, there is no evidence Laureys intended to use a facility of interstate commerce to do so. *Cf. United States v. Spurlock*, 495 F.3d 1011, 1014 (8th Cir. 2007) ("We conclude that Spurlock intended to entice minor girls to have sex with him, and that his conversations with their purported mother were a substantial step toward that end."); *id.* at 1012 ("Detective Wilson, posing as [their

It is an open question in this circuit whether § 2422(b) permits a conviction for persuasion of an adult. I say it is an open question only in the sense that we have never addressed it; the plain meaning of the statute leaves no room for doubt about the answer. Section 2422(b) is unambiguously directed at persuasion of a minor. Under these circumstances, the lack of controlling precedent does not save the jury instruction from plain error. "Even absent binding case law, . . . an error can be plain if it violates an absolutely clear legal norm, for example, because of the clarity of a statutory provision." *In re Sealed Case*, 573 F.3d 844, 851 (D.C. Cir. 2009) (quotation marks omitted); *see also United States v. Burroughs*, 613 F.3d 233, 244 (D.C. Cir. 2010) ("The lack of case law squarely on point does 'militate against' finding plain error, but it is not dispositive." (citation and quotation marks omitted)).

The court cites out-of-circuit precedent in an effort to prove any error in the district court's instruction was not plain. I am not persuaded. Only one circuit court has ever held § 2422(b) criminalizes the attempt to persuade an *adult* to cause a child to engage in sexual conduct. *See United States v. Murrell*, 368 F.3d 1283, 1287 (11th Cir. 2004). That precedent is on weak footing. The *Murrell* panel mistakenly assumed § 2422(b) penalizes any attempt to solicit sex with a minor. *See id.* at 1287. A subsequent panel of the same court hinted *Murrell*'s analysis was based on a misreading of the statute. *United States v. Lee*, 603 F.3d 904, 916 (11th Cir. 2010). Returning to the statute's plain meaning, the *Lee* panel held that "the government must prove that the defendant intended to cause assent on the part of the minor." *Id.* at 914;

---

mother,] pretended to allow the girls to chat directly with Spurlock."). And there is no evidence Laureys attempted to entice the fictitious girl through his online communication with "Jim." *Cf. id.* at 1014 ("[Spurlock] admitted at trial that he 'tried to persuade those two girls through their mother to engage in sexual acts.'").

*accord United States v. Lanzon*, 639 F.3d 1293, 1299 (11th Cir. 2011). Without explicitly overturning *Murrell*, *Lee* charitably construed "[t]he holding of *Murrell*" to be "that a reasonable jury could have found that Murrell attempted to 'induce' a minor to engage in sexual activity with him because he 'attempted to stimulate or cause the minor to engage in sexual activity with him.'" *Lee*, 603 F.3d at 916 (quoting *Murrell*, 368 F.3d at 1287).

The other courts that have affirmed convictions under § 2422(b) based on a defendant's communication with an adult have followed the reasoning of *Lee*, not *Murrell*. That is, they have required proof the defendant attempted to cause assent on the part of a minor, not the adult intermediary. In each of these cases, the defendant's communication with an adult was either a vehicle through which the defendant attempted to obtain the child's assent,[3] or a substantial step

---

[3] *See United States v. Berk*, No. 09-2472, 2011 U.S. App. LEXIS 15501, at *18, 19–20 (1st Cir. July 27, 2011) ("Section 2422(b) criminalizes an intentional attempt to achieve a mental state—a minor's assent . . . . The trial court could easily have found that the explicit communications with a person whom Berk thought was the father of a 12-year old girl about 'renting her out,' along with the concomitant request to see what the girl thought of the idea, were part of an attempt to achieve the requisite mental state in the minor."); *United States v. Douglas*, 626 F.3d 161, 164 (2d Cir. 2010) ("[T]he statute criminalizes obtaining or attempting to obtain a minor's assent to unlawful sexual activity. Such assent might be obtained, for example, by persuading a minor's adult guardian to lead a child to participate in sexual activity." (citation omitted)); *Spurlock*, 495 F.3d at 1014; *see also United States v. Nestor*, 574 F.3d 159, 162 n.4 (3d Cir. 2009) (suggesting in dicta that criminal persuasion may not require direct communication with a minor because "[s]exual predators can and do . . . attempt to persuade children to engage in sexual activity through the victim's parents or guardians").

toward persuasive communication with the child herself.[4] Laureys's case does not require us to decide whether these courts were right to hold the requisite attempt to persuade a minor may be proven exclusively by communication with an adult. All of these courts agree § 2422(b) requires an attempt to bend the child-victim's will. They offer no support therefore to the district court's jury instruction, which permitted a conviction for persuading an adult, absent any effort to win the child's assent. Only the discredited *Murrell* opinion took the view that attempting to persuade an adult to cause a child to engage in sexual conduct, without more, satisfies the elements of § 2422(b).

More to the point, the errors of other courts do not immunize the district court's jury instruction on plain error review.

> [W]e have recognized that a division of authority on a given point may provide cause to question the plainness of an error, but we did so in cases lacking the kind of clear statutory language at issue here. Moreover, [this court has] not hesitated to deem an error involving clear language plain, even when another circuit considered the provision ambiguous enough to defeat a finding of plain error.

*In re Sealed Case*, 573 F.3d 844, 851–52 (D.C. Cir. 2009) (citations omitted). In *In re Sealed Case*, we explicitly rejected "the government's view [that] [a] circuit split on [the

---

[4] *See United States v. Nestor*, 574 F.3d 159, 162 (3d Cir. 2009) ("He took substantial steps calculated to put him into direct contact with a child so that he could carry out his clear intent to persuade, induce, entice, or coerce the child to engage in sexual activity."); *Spurlock*, 495 F.3d at 1014.

relevant] issue necessarily means that the error could not have been plain." *Id.* at 851. We found plain error in the district court's treatment of rehabilitation as justifying a longer prison term despite precedent from the Eighth and Ninth Circuits supporting the district court's decision. *See id.* at 848–51. Here, as in *In re Sealed Case*, the relevant statute "speaks with absolute clarity" on the subject of the district court's decision, *id.* at 851, so the contrary view of one out-of-circuit case does not save the jury instruction from plain error.

In *Murrell*, the Eleventh Circuit held that "[b]y negotiating with the purported father of a minor, [the defendant] attempted to stimulate or cause the minor to engage in sexual activity with him" and therefore his "conduct fits squarely within the definition of 'induce.'" 368 F.3d at 1287. The Eleventh Circuit noted that "induce" could mean either "'to lead or move by influence or persuasion; to prevail upon,' or alternatively, 'to stimulate the occurrence of; cause.'" *Id.* (citing AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE 671 (1981)). The *Murrell* panel decided Congress must have intended the second definition, because the first was "essentially synonymous with the word 'persuade'" and would make that word in the statute superfluous. *Id.* On this view, the Government need not prove the defendant tried to win a child's assent; an attempt to persuade the child's guardian will suffice. *See id.*

As the district court correctly observed, "there is no equivalent of *Murrell* in this circuit." Tr. 5/26/2010, at 286. Despite its concern about "[t]he way [§ 2422(b)'s] language has to be parsed and chopped and sliced and diced in order to make everything fit," *id.*, the district court allowed Laureys to be convicted under *Murrell*'s plainly erroneous interpretation. We should reject *Murrell*'s flawed reading of § 2422(b) for four reasons.

First, the second definition of "induce" ("to stimulate the occurrence of; cause") is incompatible with that word's statutory context. In § 2422(b), the verb "induce" has a person as its object—"any individual who has not attained the age of 18 years." 18 U.S.C. § 2422(b). But "induce" only means "cause" when its object is inanimate. *See* OXFORD ENGLISH DICTIONARY ONLINE, "induce," def. 4(a) (listing examples), http://www.oed.com/view/Entry/94758 (last visited August 9, 2011). For example, one can induce a chemical reaction or induce labor without bringing about a person's assent. By contrast, when "induce" is used with a personal object, it has the first meaning. *See id.* def. 1 ("To lead (a person), by persuasion or some influence or motive that acts upon the will, to (into, unto) some action, condition, belief, etc.; to lead on, move, influence, prevail upon (any one) *to do* something."). For example, one does not induce a person to donate to a charity by forcibly seizing her money, but by convincing her that it is the right thing to do.

Second, the word "induce," in its first definition, is not "essentially synonymous with the word 'persuade,'" as the *Murrell* court said it was. 368 F.3d at 1287. The word "persuade" suggests the use of reason, but the word "induce," though it can bear that meaning, may signify any force, such as trickery, that acts upon the will. For example, one may induce a person to donate to one charity by convincing her that she is donating to another. Moreover, Congress often uses multiple words with overlapping meaning to capture a broad swath of conduct. That the most sensible definition of "induce" overlaps with "persuade" and "coerce" does not render it superfluous. *Cf. Moskal v. United States*, 498 U.S. 103, 120–21 (1990) (Scalia, J., dissenting) ("Since iteration is obviously afoot in the relevant passage, there is no justification for extruding an unnatural meaning out of 'falsely made' simply in order to avoid iteration. The entire

phrase 'falsely made, forged, altered, or counterfeited' is self-evidently not a listing of differing and precisely calibrated terms, but a collection of near synonyms which describes the product of the general crime of forgery.").

Third, the statutory history of § 2422(b) confirms that "induce" does not mean simply "cause," but involves an act directed at bending the will of another person—here, a minor. The modern enticement statute traces its origin to the Mann Act of 1910, which used "induce" and "cause" in the same sentence.

> [A]ny person who shall knowingly persuade, induce, entice, or coerce any woman or girl under the age of eighteen years from any State . . . to any other State . . . , with the purpose and intent to induce or coerce her . . . to engage in prostitution or debauchery, or any other immoral practice, and shall in furtherance of such purpose knowingly *induce* or *cause* her to go and to be carried or transported as a passenger in interstate commerce . . . shall be deemed guilty of a felony . . . .

White Slave Traffic (Mann) Act, ch. 395, § 4, 36 Stat. 825, 826 (1910) (emphasis added). If "induce" meant the same thing as "cause," then Congress would not have used these words in the alternative in the phrase "induce or cause." That phrase suggests that when "induce" is used elsewhere in the statute, it does not simply mean "cause," but instead has in common with "persuade," "entice," and "coerce" an element of mental force. *See Cal. Indep. Sys. Operator Corp. v. FERC*, 372 F.3d 395, 400 (D.C. Cir. 2004) ("The canon of statutory construction *noscitur a sociis*, i.e., a word is known by the company it keeps[,] is often wisely applied where a

word is capable of many meanings in order to avoid giving unintended breadth to the Acts of Congress." (quotation marks omitted)); *see, e.g.*, *Valdes v. United States*, 475 F.3d 1319, 1323–24 (D.C. Cir. 2007) (applying the canon to one statutory term in a series of six related words).

Finally, the *Murrell* court reasoned that the "efficacy of § 2422(b) would be eviscerated if a defendant could circumvent the statute simply by employing an intermediary to carry out his intended objective." 368 F.3d at 1287. Not so. Congress very well could have decided that child victims are more vulnerable to online persuasion, inducement, enticement, and coercion than their adult guardians. The most sensible interpretation of subsection (b) is that Congress targeted the enticement of minors for that very reason. Congress has already provided a penalty for soliciting a child under age sixteen for sex crimes. *See* 18 U.S.C. § 2425. And other provisions penalize transporting "any individual" for sex crimes, *id.* § 2421, persuading "any individual" to travel for sex crimes, *id.* § 2422(a), transporting a minor for sex crimes, *id.* at § 2423(a), arranging such transportation, *id.* § 2423(d), traveling with the intent to engage in illicit sexual conduct, *id.* § 2423(b), engaging in the illicit sex act itself, *id.* §§ 2241–44, 2423(c), and attempting or conspiring to do so, *id.* at 2423(e). Clearly, Congress has not left prosecutors powerless against child predators who do not entice their victims on the internet. Section 2422(b) is unique in targeting efforts to overbear the wills of children online. We have every reason to presume Congress meant what it said. Congress has not been reticent to amend § 2422(b), and each successive amendment has made the statute more punitive. *See United States v. Dwinells*, 508 F.3d 63, 69 (1st Cir. 2007).[5] If

---

[5] *See* Telecommunications Act of 1996, Pub. L. No. 104-104, § 508, 110 Stat. 56, 137 (adding subsection (b) to § 2422 and establishing a maximum imprisonment term of ten years);

11

Congress wishes to expand § 2422(b) to penalize persuading an adult to grant sexual access to a child, Congress does not need our help rewriting the statute.

II

Count Two of the indictment charged Laureys with driving from Maryland to the District of Columbia "for the purpose of engaging in . . . illicit sexual conduct," 18 U.S.C. § 2423(b); namely, a sex act with a minor. Before denying Laureys's motion for a judgment of acquittal, Judge Robertson commented with admirable forthrightness on the weakness of the Government's case:

> As for the interstate travel with intent count, . . . if I were a juror, I would probably find a reasonable doubt as to whether the defendant thought there was going to be a girl in that apartment or not . . . . But I think it's a jury question, and I'm just making this record of my own concern about this statute and its razor thin application to the facts of this case in case the jury convicts and another court wants to look at it.

---

Protection of Children from Sexual Predators Act of 1998, Pub. L. No. 105-314, § 102, 112 Stat. 2974, 2975–76 (increasing the maximum term to fifteen years); Prosecutorial Remedies and Other Tools to End the Exploitation of Children Today Act of 2003, Pub. L. No. 108-21, § 103(a)(2)(B) & (b)(2)(A), 117 Stat. 650, 652, 653 (2003) (increasing the maximum term to thirty years and adding a five-year mandatory minimum); Adam Walsh Child Protection and Safety Act of 2006, Pub. L. No. 109-248, § 203, 120 Stat. 587, 613 (increasing the maximum term to life and increasing the mandatory minimum to ten years).

Tr. 5/26/2010, at 287. Because Laureys moved for a judgment of acquittal, the district court's hesitant finding about the sufficiency of the evidence is entitled to no deference. Reviewing *de novo*, and viewing the evidence in the light most favorable to the government, I would reverse Laureys's conviction.

"The crime of attempt . . . consists of (1) an intent to do an act or to bring about certain consequences which would in law amount to a crime; and (2) an act in furtherance of that intent which . . . goes beyond mere preparation." *United States v. Washington*, 106 F.3d 983, 1005 (D.C. Cir. 1997) (quoting 2 WAYNE R. LAFAVE & AUSTIN W. SCOTT, JR., SUBSTANTIVE CRIMINAL LAW 18 (1986)). Assuming that Laureys believed the girl existed, that Laureys believed Jim would allow him to engage in sexual conduct with her, and that Laureys intended to do so at his earliest opportunity, the Government still failed to show Laureys took a substantial step toward the commission of that crime.

A substantial step is one that manifests "a true commitment toward completing the crime" and "demonstrat[es] that the crime will take place unless interrupted by independent circumstances." *United States v. Hofus*, 598 F.3d 1171, 1174 (9th Cir. 2010) (quotation marks omitted); *see also United States v. Ramirez*, 348 F.3d 1175, 1180 (10th Cir. 2003) ("A substantial step is an appreciable fragment of a crime and an action of such substantiality that, unless frustrated, the crime would have occurred. The step must be strongly corroborative of the firmness of the defendant's criminal intent and must unequivocally mark the defendant's acts as criminal." (quoting *United States v. Smith*, 264 F.3d 1012, 1016 (10th Cir. 2001)); *United States v. Bailey*, 228 F.3d 637, 640 (6th Cir. 2000) ("It must be necessary to the consummation of the crime and be of such a

nature that a reasonable observer, viewing it in context could conclude beyond a reasonable doubt that it was undertaken in accordance with a design to violate the statute." (quoting *United States v. Manley*, 632 F.2d 978, 987–88 (2d Cir. 1980)). As the district court put it to the jury, a substantial step is part of a "course of conduct planned to culminate in the commission of the crime." Dist. Ct. Docket No. 52, at 16; *accord United States v. Resendiz-Ponce*, 549 U.S. 102, 107 (2007); *United States v. Duran*, 96 F.3d 1495, 1508 (D.C. Cir. 1996).

"Important to a substantial-step assessment is an understanding of the underlying conduct proscribed by the crime being attempted." *United States v. Farhane*, 634 F.3d 127, 148 (2d Cir. 2011). Here, the underlying conduct is interstate travel for the purpose of sexual conduct with a minor. Driving to the address Jim provided would be a substantial step toward the commission of that conduct only if Laureys intended that drive to culminate in sex with a minor.

> If § 2423(b) proscribed interstate travel with the mere abstract intent to engage in sexual activity with a minor at some undetermined point in the future, this would be a more difficult case. . . . By requiring that the interstate travel be 'for the purpose of' engaging in illicit sexual activity, Congress has narrowed the scope of the law to exclude mere preparation, thought or fantasy; the statute only applies when the travel is a necessary step in the commission of a crime.

*United States v. Tykarsky*, 446 F.3d 458, 471 (3d Cir. 2006).

The evidence is insufficient as a matter of law, because it cannot possibly prove Laureys intended to have sex with

anyone but Jim during the relevant trip. Even if Laureys entertained some hope that he might have sex with a child in the future, his drive to meet with Jim was at best "mere preparation" for a future crime. *See United States v. Bolden*, 514 F.2d 1301, 1307 n.10 (D.C. Cir. 1975) ("'[C]asing' [a] store preparatory to a later attempt to rob" would be "mere preparation" for the robbery, not "an indictable attempt.").

There is no evidence whatsoever that Laureys was driving to the District to have sex with a child. Detective Palchak admitted there was "no implication anywhere that the girl [was] going to be at this setup meeting" at Jim's place. Tr. 5/25/2010, at 215. Jim said only that his girlfriend "comes over a lot" and that he had been "messing around" with her nine-year-old daughter. Indeed, the chat was remarkably silent about Jim's ability and intent to procure the victim. Laureys was focused instead on arranging a meeting between him and Jim. Unlike Laureys's very practical arrangements to meet Jim, his lewd statements about the fictitious girl were never more than hypothetical. Merely proposing illegal sexual conduct at some unspecified point in the future is not a substantial step toward its commission. *See United States v. Gladish*, 536 F.3d 646, 649–50 (7th Cir. 2008). After planning their meeting at Jim's apartment, and for the last ten minutes of the chat, neither he nor Laureys ever mentioned the fictitious girl again. Instead, Laureys asked Jim, "you got anything fun we could watch or something while we're there[?]" Detective Palchak admitted Laureys did not bring up the girl during their phone calls. *See* Tr. 5/25/2010, at 175–76, 223.

The most likely interpretation of this evidence is that Laureys assumed the girl—if she even existed—would not be present at this meeting. Laureys's assumption was reasonable, since Detective Palchak's statements as "Jim" were consistent

with a sexual liaison between two men, not a prelude to child molestation. He invited Laureys to "get a beer first to make sure we are comfortable then have fun at my [place]." And he described himself physically: "I'm a white dude about 6 foot 190 [¶] 38 [¶] you[?]" Any reasonable juror would have entertained grave doubts about Laureys's intent to engage in sexual conduct with a real child upon his arrival in the District.

## III

This is a disturbing case. Laureys's chat with Detective Palchak and his testimony at trial demonstrate moral depravity, but they do not meet the Government's burden to prove the requisite criminal intent. I would reverse Laureys's convictions. Therefore, I respectfully dissent.